SIMON BRANDT, Appellant, v. JOHN STORY, Appellee.

**Slander and libel:** MITIGATION: PLEADINGS. In actions for slander and libel proof of mitigating circumstances is not admissible unless pleaded, except such as are shown by the testimony of the adverse party. Under this rule evidence of the good faith of defendant and that the circumstances justified his charge was inadmissible, in the absence of a plea tendering the issues.

**Same:** MITIGATION: EVIDENCE. Where the plaintiff in an action for slander fails to prove justification, evidence of mitigating circumstances, including the good faith of defendant, is not admissible to reduce the actual damages plaintiff has suffered, but is only admissible on the question of exemplary damages.

**Same:** WORDS ACTIONABLE PER SE: GOOD FAITH AS A DEFENSE. Where the words used are actionable *per se* the law implies malice and damages, and they need not be alleged; but if not actionable *per se* the plaintiff must allege and prove special damages. Defendant's good faith in the utterance of words actionable *per se* is no defense to an action for the slander. Nor is the fact that defendant relied in good faith on what others told him, charging plaintiff with a crime, any defense to an action for the slander.

**Same:** PUNITIVE DAMAGES. Where slanderous words are spoken without any belief in their truth, and with intent to injure the good name of another, punitive damages should be assessed.

**Same:** MITIGATION OF DAMAGES. Where the words spoken charge plaintiff with the commission of a crime the law implies malice without actual proof of the same; but where the implied malice is disproved and it is shown that the words were spoken in good faith and in the belief of their truth this may be considered, not in mitigation of the actual damage suffered, but to reduce the punitive damages which might otherwise be assessed.

*Appeal from Monroe District Court.*—HON. FRANK W. EICHELBERGER, Judge.

Thursday, October 23, 1913.

Action to recover damages for slander.—*Reversed.*

*Jno. F. Abegglen*, for appellant.

*George H. Woodson*, for appellee.

Gaynor, J.—The plaintiff brings this action to recover damages of the defendant on account of certain slanderous words alleged to have been spoken by the defendant of and concerning the plaintiff. After the preliminary statements in his petition, he alleges as a basis of recovery as follows: That on or about the 4th of July, 1911, the defendant, for the express purpose of injuring the plaintiff and defaming his good name, character, and reputation, and for the express purpose of bringing reproach upon his good name and reputation and depriving him of the confidence, friendship, and esteem of his associates, and especially his fellow workmen engaged in the same camp of Buxton, Monroe county, Iowa, uttered of and concerning the plaintiff the following false, malicious, and defamatory words, to wit:

Simon Brandt is a thief; that he has been stealing coal of me (the defendant) and of others; that he has paid the driver to help him steal coal; that he has put his own check on the cars of coal mined by others of the boys and has gotten credit for many cars of coal not mined by him, and that he has stolen as many as fifteen and twenty cars each two weeks, and that is the reason he makes so much more than I (the defendant) and the other boys; that I told the pit committee that he has been stealing coal from me and the other boys; that the local union ought to do something with him.

Or, if the precise words were not used, the defendant used words and language in substance the same as that above set forth. That said language was uttered at the premises of the plaintiff in Buxton, Iowa, in the presence and hearing

of one Fred Kulling; both said defendant and the said Fred Kulling at the time being boarders of the plaintiff. That said language so uttered by the defendant was false and untrue in every particular, and said false and slanderous language was made for the express purpose of injuring the good name, character, and reputation of the plaintiff, and the plaintiff has been injured and damaged thereby in a large sum. The plaintiff further alleges that on the 15th day of July of the same year the defendant made use of substantially the same language of and concerning the plaintiff in the presence of one Traussnik and others.

The defendant, for answer to the plaintiff's petition and claim, denies that he made the statements alleged to have been made by him of and concerning the plaintiff, and further answering says that he has not done any act or deed or uttered any words concerning the plaintiff for the purpose of injuring the plaintiff's reputation and character, or with the intention of bringing reproach upon his name or reputation, or depriving him of any confidence, friendship, and esteem with the community or with his associates. The defendant, further answering, by way of amendment, says that all he did or said was for the sole purpose of protecting his interests and the interest and the welfare of his fellow workmen, who were and are mine workers with the defendant and members of the same voluntary association, and says that he never meant to call the defendant a thief; never did or said anything through malice or with a view of injuring the plaintiff; and defendant further says and states that, by the acts and deeds of the plaintiff and the facts surrounding the case, he was fully justified in all he did and said, and the defendant pleads the truth of the facts and circumstances of the case as a defense and pleads full justification in defense of all his actions.

Upon the issues thus tendered, the cause was tried to a jury and verdict returned for the defendant. Judgment having been entered upon the verdict, the plaintiff appeals.

It appears from the evidence that the defendant and plaintiff were miners and at the time of the speaking of the words complained of were working in the same mine; that the defendant boarded with the plaintiff; that on the 4th day of July, 1911, after they came out of the mine, the defendant had a conversation with one Fred Kulling, and Kulling testifies that the defendant said to him that the plaintiff was giving the driver his (Brandt's) checks to put on cars; that the plaintiff was getting more cars extra; that he was stealing the cars and checking the cars; that he was getting cars checked that did not belong to him; that he was getting cars checked in the mine for coal that he did not dig.

Mrs. Brandt, wife of the plaintiff, testified:

I was working in the cellar. Story came out of the house and spoke to me. He took out his pocketbook and paid his board. Said that he would not stay longer; that her husband, the plaintiff, is too dirty for him; that he didn't want to see him no more. I asked him what was the matter. He said, 'Simon (meaning the plaintiff) is too dirty for me. He steals coal in the mine and he checks the cars.' He so mad, I don't know. I am scared of him, and I says, 'My, he speak like that to me;' and he says, 'I know that for a long time;' and I says, 'Why if you know that for so long time, what for you don't tell me before?' He says, 'I called the pit committee to-day.' He says if he steal the coal and he check the cars (plaintiff's cars). My husband was in the house at the time. I told Story to wait a minute until I go in the house and I call my husband. Story want to go away and did leave soon afterwards. I told him I do not believe he steal the coal. I didn't believe it when John Story told me so.

The plaintiff, being called as a witness, testified that he and Story had been working in the same mine prior to this Saturday; that when his wife called him out of the house, as testified to by her, Story was there, "and my wife said to me, in the presence of Story, 'You know what John Story said about you.' I said, 'What?' My wife says, 'You been thief. You stealing coal in the mine.' My wife was awful

nervous. I says, 'What, stealing coal in the mine?' My wife says, 'Yes, sir.' After that Story went away.''

Over the objection of the plaintiff, the court allowed the defendant to detail conversations had with other persons, not in the presence of the plaintiff, touching the conduct of the plaintiff in respect to the matter charged against him, and permitted the defendant to testify as follows: ''I was sitting in a car some time before this and some one came to me and said: 'I have been in your room. I looked for you. I want checks from you.' I said: 'You want checks from me. What for you want checks?' The party responded, 'I thought you were Simon Brandt.'" Defendant testified further: ''Tom Roman told me that he had lots of bother with cars, for to watch the cars on my entry and I would find out what the trouble was with the cars.''

The following question was asked of Romans, a witness for the defendant, and answered over the objection of the plaintiff: ''Tell me and the jury and the court whether or not there was considerable complaint in that mine about lost cars. What I mean by that, men claiming that they did not get the cars that they had dug and checked and sent up on top from the mine or not''—to which the witness answered, ''Yes;'' and that John Story also made like complaint and that he told Story to look after Brandt because he was claiming a lot of cars, and if the turn was four down there that day he had too many. After that there was an investigation, and after the investigation there was not so much complaint about cars; that practically wiped out the complaints about cars.

The plaintiff then, in rebuttal to defendant's testimony, called on Warren Bingham, who testified as follows: ''I am a driver at No. 14 Buxton Mines and have worked there as such five years; was there during summer of 1911; was driver from rooms of Brandt and Story; as driver we encounter a great deal of loose coal up and down the entries; I never put Brandt's check on any of Story's cars or on that of any other miner; nor did I ever take a car of Story and place Brandt's

check on it; we gathered up some loose or lost coal along the entry and put Brandt's check on it; and I never put Brandt's check on any other cars other than that what I gathered up along the entry (lost coal) ; it often occurs that cars of coal are misplaced or lost and miners making complaint of cars being short; and that is true at the present time."

This is practically all the testimony material to a determination of this case upon the record here made. It is true, however, that plaintiff denies all the testimony of defendant. It is not our purpose to review the evidence or determine its want or sufficiency. We will confine ourselves to a discussion of the errors alleged to have been committed by the court in the trial of the cause of which the appellant in this court complains.

The plaintiff's first complaint is that the court allowed evidence of mitigating circumstances, although there was no issue of that kind tendered in the plea, and in the fifth

1. SLANDER AND LIBEL: mitigation : pleadings.

instruction the court told the jury that it might consider this evidence in mitigation of damages and without any limitation as to what damages this may or may not tend to mitigate. This complaint is well taken for the reason that the statute provides that no mitigating circumstances shall be proved unless pleaded, except such as are shown by, or grow out of, the testimony introduced by the adverse party. See section 3593 of the Code of 1897. This court has frequently held to this doctrine, both in libel and slander suits. See *Wallace v. Homestead,* 117 Iowa, 356; *Royal v. Smith,* 40 Iowa, 616; *Peck v. Parchen,* 52 Iowa, 46; *Herriman v. Layman,* 118 Iowa, 593; *Jenks v. Lansing Lumber Co.,* 97 Iowa, 345; *Craver v. Norton,* 114 Iowa 46.

Further this complaint is well taken for the reason that, where the plaintiff fails to prove justification, the evidence of mitigating circumstances cannot go to reduce the actual

2. SAME: mitigation : evidence.

damages which the plaintiff sustains by reason of the speaking of the slanderous words but can only go to the question of exemplary damages. That is,

the good faith of the defendant and his belief in the truth of the charges made cannot be shown for the purpose of relieving him of his legal obligation to the plaintiff to reimburse him for the actual damages which follow from his wrong. See *Wallace v. Homestead,* 117 Iowa, 356; *Morse v. Printing Co.,* 124 Iowa, 718, and cases therein cited; *Eller v. Loomis,* 106 Iowa, 276; *Fitzgibbon v. Railway Co.,* 108 Iowa, 614; *Storrs v. Emerson,* 72 Iowa, 390; *Negley v. Cowell,* 91 Iowa, 256; *Wall v. Railway Co.,* 89 Iowa, 193.

This case was tried upon the theory, on the part of the plaintiff, that the words alleged to have been spoken, if spoken, were actionable *per se* and charged ·plaintiff with the crime of larceny. The plaintiff, therefore, alleged no special damages resulting from the speaking of the words, and this for the reason that, where the words are actionable *per se,* the law implies damages and malice. If the words spoken were not actionable *per se,* the plaintiff, to be entitled to recover, must allege and prove special damages. This he did not do or attempt to do. Therefore he alleged and proved no cause of action against the defendant, unless he proved the speaking of the words substantially as alleged in his petition or words of like import and meaning, and which, in their ordinary acceptation and sense, charged the plaintiff with the crime of larceny, and the jury should have been so told by the court. But if the plaintiff established his charge that the words were spoken substantially as claimed, and the words spoken in their usual and ordinary sense imputed to the plaintiff the crime of larceny, then the plaintiff was entitled to recover, without the proof of special damages, and the good faith of the defendant or his honest belief in the truth of the charges made were not and could not reduce or affect the actual damages which the plaintiff sustained by reason of the speaking of the words.

3. SAME: words actionable per se: good faith as a defense.

Nor would that be any defense to plaintiff's claim.

It would be no defense to the speaking of the words that

he relied in good faith upon what others told him touching the matter. These could only be considered in mitigation of damages, and this, to be available, must be pleaded, and the damages to be affected or reduced by proof of this character are only those damages which the jury might impose as a punishment to the defendant for malicious defamation of character, otherwise known as punitive or exemplary damages. See authorities hereinbefore cited.

It is evident that the damages which one sustains by being publicly charged with the commission of a crime will not be affected where the words are unqualifiedly spoken by the good faith of the speaker or his belief in their truth any less than if they were spoken willfully and maliciously. Often the good faith and candor of the speaker creates a stronger impression upon the minds of the hearers than if spoken in an apparent spirit of malice and vindictiveness.

Where the words are spoken and shown to be spoken without any belief in their truth or reason to believe that they are true and with the intent of injuring the good name of another 4. SAME: punitive damages. punitive damages ought to be awarded as a punishment and to warn others not to recklessly, willfully, and maliciously defame the character of another.

It is true that, where the words spoken charge the plaintiff with the commission of a public offense, the law implies malice and without any proof of actual malice. But where the 5. SAME: mitigation of damages. implied malice is disproved, and it is shown that the words were spoken in good faith and in an honest belief in their truth, this may be considered by the jury, not for the purpose of reducing the actual damages sustained, but in mitigation of the damage which otherwise might be assessed by the jury as a punishment to the defendant.

For the errors pointed out, the case is *Reversed*.

WEAVER, C. J., and DEEMER and WITHROW, JJ., concur.