CITY OF LA CROSSE and another, Respondents, vs. RAILROAD
COMMISSION OF WISCONSIN and another, Appellants.

*March 11—September 25, 1920.*

*Public utilities: Emergency orders: Jurisdiction of railroad com-
mission: Inquest necessary to determine existence of emer-
gency: Evidence: Common knowledge as to rise in prices
during the war.*

1. Sec. 1797m—99, Stats., relating to the temporary alteration or·
   suspension of rates of a public utility on account of an emer-
   gency, does not require that the railroad commission, in
   determining whether or not such an emergency exists, shall
   undertake such an inquest as is required of it in order to
   establish permanent reasonable rates and adequate service, the
   commission being given power to act upon its own motion in a
   summary manner when it deems it necessary to protect the
   utility business or the interests of the people when they are
   threatened by emergency conditions of the nature contem-
   plated by the statutes.

2. When an emergency exists under said sec. 1797m—99 requir-
   ing a temporary increase in rates, the railroad commission is
   to exercise its judgment in the matter, and its action is not to
   be overruled unless it appears that it exceeded its powers or
   that its acts impose unreasonable or unjust discriminatory
   burdens on the people or the utility.

3. An order of the railroad commission of June 30, 1918, increas-
   ing the rates which the Wisconsin-Minnesota Light & Power
   Company could charge for its gas, is *held* an emergency in-
   crease of rates under sec. 1797m—99 and within the power
   of the commission to make if in fact an emergency existed.

4. It is a matter of common knowledge that the cost of labor, sup-
   plies, fuel, and other material required to conduct a utility
   selling gas largely increased during the war period, and that
   such high prices continue to the present time, necessarily in-
   creasing the cost of doing business; and it is *held* that the
   evidence does not refute the finding of the commission that
   an emergency existed.

APPEAL from a judgment of the circuit court for Dane
county: E. RAY STEVENS, Circuit Judge. *Reversed.*

The appeal is from a judgment setting aside an order of
the *Railroad Commission* entered on June 30, 1918.

On May 25, 1918, the *Wisconsin-Minnesota Light &
Power Company* filed a petition with the *Railroad Com-
mission* for an emergency increase of rates for gas sold by
petitioner in the city of *La Crosse*. The petition recited
that new conditions, due to uncontrollable and unexpected
events in the cost of gas production, necessitated an in-
crease in gas rates. A hearing was had at the city of *La
Crosse* on June 11, 1918, and after taking testimony the or-
der in question was granted by the *Railroad Commission*
on June 30, 1918. Suit was brought by the city of *La
Crosse* and *Henry Rooney* to have this order set aside.
Upon the trial further evidence was introduced in circuit
court, and the case was transmitted to the *Railroad Com-
mission,* which on February 25, 1919, made an order modi-
fying its order of June 30, 1918, so as to put in effect a
surcharge of twelve cents per thousand cubic feet of gas in
addition to existing rates, instead of a twenty-cent sur-
charge as provided in the order of June 30, 1918. As soon
as the order of February 25, 1919, was reported to the cir-
cuit court, the *Wisconsin-Minnesota Light & Power Com-
pany* filed its cross-complaint asking that this order be re-
viewed by the court and that the matter of fixing the gas
rate be remanded to the *Railroad Commission* for further
consideration. Answers to the cross-complaint were filed
by plaintiff and the *Railroad Commission*. After taking
further testimony the matter was again transmitted to the
*Railroad Commission,* which on July 8, 1919, made a re-
port that an order had been made by it revoking its order
of February 25, 1919, and re-establishing its order of June
30, 1918, authorizing a surcharge of twenty cents per thou-
sand cubic feet in addition to the ten-cent surcharge author-
ized by its order of August 22, 1917.

This order was granted by the *Railroad Commission* upon
the grounds reported by them that the expense of gas pro-
duction, such as labor, fuel and materials, coke sales, coke-

handling expenses, and raises of wages, had so increased that the defendant company would be unable to make a fair return on its investment without the allowed raise in rates. On September 23, 1919, the circuit court filed its findings of fact and conclusions of law, setting aside the order of the Railroad Commission of June 30, 1918, for the reason that at the time such order was made no emergency existed within the meaning of that term as used in sec. 1797m—99, Stats. Judgment to that effect was entered. Defendants appeal from this judgment.

For the appellants there was a brief by the *Attorney General* and *E. E. Brossard,* assistant attorney general, attorneys for the *Railroad Commission,* and *Charles McPherson* of Grand Rapids, Michigan, and *Lees & Bunge* of La Crosse, attorneys for the *Wisconsin-Minnesota Light & Power Company;* and the cause was argued orally by *Mr. Brossard* and *Mr. Andrew Lees.*

For the respondents there was a brief by *Charles H. Schweizer,* special counsel, *O. J. Swennes,* city attorney, and *J. E. Higbee,* of counsel, all of La Crosse; and the cause was argued orally by *Mr. Schweizer.*

The following opinion was filed June 1, 1920:

SIEBECKER, J. On June 30, 1918, the *Railroad Commission* made an order upon the petition of the defendant utility increasing the existing charges for gas in the city of *La Crosse* twenty cents per thousand cubic feet of gas in addition to existing rates, which included a ten-cent surcharge granted August 22, 1917. The *Commission* declared that the increase was justified in view of the increased cost of fuel, labor, and materials required to operate the gas utility. The nature of the proceeding was considered by the *Commission* in acting on the petition, and it was determined to be one under the provisions of sec. 1797m—99, Stats., for a temporary alteration of rates on

account of an emergency. Sub. 1 of this sec. 1797m—99 provides:

"The commission shall have power, when deemed by it necessary to prevent injury to the business or interests of the people or any public utility of this state in case of any emergency to be judged of by the commission, to temporarily alter, amend, or with the consent of the public utility concerned, suspend any existing rates, schedules and order relating to or affecting any public utility or part of any public utility in this state."

Sub. 2 provides:

"Such rates so made by the commission shall apply to one or more of the public utilities in this state or to any portion thereof as may be directed by the commission, and shall take effect at such time and remain in force for such length of time as may be prescribed by the commission."

The power conferred by this statute is in its nature like the power conferred on the *Commission* to alter, amend, or suspend existing rates, schedules, or orders pertaining to the railroad traffic of the state. Sec. 1797—28, Stats. 1919.

It is manifest that these provisions confer powers on the *Commission* different from those granted it to order permanent reasonable rates for adequate service rendered the public by a utility. The language of this statute is that these powers shall be exerted by the *Commission* "when deemed by it necessary to prevent injury to the business or interests of the people . . . in case of any emergency to be judged of by the commission," and that any such rates made by the *Commission* "shall take effect at such time and remain in force for such length of time as may be prescribed by the commission." Manifestly the *Commission* is authorized to act within these powers to protect the people or any utility business of this state. The statute calls for summary action by the *Commission* to meet the unusual conditions of such business created by unforeseen and unexpected culmination of circumstances which threaten to injure the utility business or the interests of the public con-

nected therewith.   The provisions· do not require that the *Commission,* in determining whether or not such an emergency exists, shall undertake such an inquest as is required of it in order to establish permanent reasonable rates and adequate service of utilities.   It is manifest that the *Commission* is given power to act upon its own motion in a summary manner when it deems it necessary to protect the utility business or the interests of the people when they are threatened by emergency conditions of the nature contemplated by the statutes.   When this statutory condition arises, the *Commission* is to exercise its judgment in the matter, and its action is not to be overruled unless it appears that it exceeded its powers or that its acts result in unjustifiably imposing unreasonable or unjust discriminatory burdens on the people or the utility.   The action of the *Commission* under these powers is not therefore to be judged upon the same grounds nor tested by the same conditions as are the orders it may make in establishing permanent reasonable rates or ordering adequate service.   An examination of the record clearly shows that the proceedings taken before the *Commission* which culminated in the order of June 30, 1918, were in their nature for an emergency increase of gas rates, and that the parties to the proceedings as well as the *Commission* so considered them.   It must be held that the order of June 30th is an order for an emergency increase of rates. While the *Commission* considered many facts that would necessarily be involved in determining a permanent reasonable and lawful rate, it declares expressly that it did not attempt to ascertain all the facts necessarily involved and required to be known to fix a permanent reasonable and lawful rate.   It is to be noted that an application was pending before the *Commission* when this proceeding was in progress to have the *Commission* make such a permanent rate; presumably the *Commission* is acting in that matter.   The provisions for emergency rates and services were evidently designed to empower the *Commission* to alter and suspend

rates, schedules, and orders under emergency conditions for immediate protection of the public utility business or the public interests during the time required by the *Commission* to enable it to establish permanent rates and orders for ade- quate service. The facts of the record disclose that the *Commission* was within its jurisdiction in promulgating the order of June 30, 1918, as an emergency order, if the facts and circumstances thus disclosed show that an emergency existed respecting the business of the defendant utility. The application for this emergency increase of gas rate and the order of the *Commission* were obviously made upon the ground that the conditions incident to the war caused a large and unexpected increase in the cost of labor, material, and supplies required to conduct this business. It is a mat- ter of common knowledge that the cost of labor, supplies, fuel, and other material required to conduct the utility did largely increase during the war period and that such high prices continue to the present time. This increase in cost must of necessity have increased the expenses of conducting the business very materially and to a degree which in all probability rendered the rate theretofore established as a reasonable one under former conditions insufficient to meet these new and unforeseen circumstances of the high price of labor and the advanced cost of materials and supplies. This being true, can it be said that the *Commission* acted arbi- trarily and unlawfully in the light of the facts disclosed to them? The *Commission,* upon subsequent investigation of the facts referable to the existing conditions on June 30, 1918, found that the gas rate in existence before this date did not yield a fair return to the utility as then conducted to meet the requirements of the enhanced cost of conducting the business, including interest and depreciation charges. An examination of the facts before us shows that this con- clusion of the *Commission* was justified upon the facts then available to it for determining the fact of an emergency.

The *Commission* up to the time of trial in circuit court

had not been enabled to make an independent audit of the company's income account for the year 1918, nor to make a valuation of its property—two important factors in determining what is a reasonable and lawful gas rate under existing conditions. But it is claimed that the utility's conduct of its business was shown to be grossly inefficient and extravagant and that these conditions of the company's business account for any loss or impairment of its financial returns under rates existing prior to June 30, 1918. We are not satisfied that the facts of the record show this result with sufficient certainty to overturn the findings of the *Commission* on which the order of June 30, 1918, is based. The Commission's finding of the existence of the emergency must stand.

. It is considered that the large and unforeseen increase in the cost of labor, supplies, and materials brought about by the conditions of the war was sufficient to show that an emergency existed in the conduct of the utility business which was operating and furnishing gas at a rate which was established as reasonable and lawful under conditions existing prior to the increased cost of labor, supplies, and materials, and that the facts before the court do not refute the *Commission's* conclusions that an emergency existed within the contemplation of the statute.

*By the Court.*—The judgment appealed from is reversed, and the cause remanded to the trial court with directions to affirm the June 30th order of the *Commission* as an emergency order.

The following opinion was filed August 9, 1920:

OWEN, J. (*concurring*). I do not agree that the facts of this case constitute an emergency within the contemplation of the statute. While I think the order of the *Railroad Commission* should not be sustained as an emergency order, it is my opinion that it may be sustained as an order made

in due course. *Smith v. Railroad Comm.* 169 Wis. 547, 173 N. W. 312. I therefore concur in the result.

A motion for a rehearing was denied, with $25 costs, on September 25, 1920.