CARRIE V. BURGHARDT, Appellee, v. SCIOTO SIGN COMPANY, Appellant.

**TRIAL: Estoppel to Question Special Finding.** He who secures the submission of a direction to the jury to find specially on a given point, may not successfully ask the court to disregard the finding returned, even though the propriety of the original submission is debatable.

**MASTER AND SERVANT: Measure of Damages For Wrongful Discharge.** A servant working solely on commissions on sales obtained at his own expense may not, when wrongfully discharged, recover any part of his probable commissions during the contract period, unless he shows what deductions should be made (1) for expenses and (2) for the value of his time.

**LIBEL AND SLANDER: Charge of Unfaithfulness to Employer—Effect.** A written, published charge that an employee has been guilty of dishonorable and unfaithful conduct toward his employer, of such a nature that such charge, if believed, would naturally injure the employee, and prevent him from securing employment, constitutes a libel *per se*, and casts upon the author of the charge the burden to overthrow three resulting legal presumptions, to wit:
    (1) That the charge was false.
    (2) That the author was actuated by malice.
    (3) That the one so assailed has been damaged in some amount.

*Appeal from Linn District Court.*—MILO P. SMITH, Judge.

SEPTEMBER 29, 1920.

REHEARING DENIED APRIL 7, 1921.

ACTION at law, brought by plaintiff to recover from defendant: (1) An amount alleged to be due plaintiff for commissions earned by her, pursuant to a written contract between

the parties; (2) an amount of damages sustained by plaintiff by reason of her wrongful discharge from defendant's service before the expiration of her term of employment; and (3) other damages on account of an alleged libel written and published by the defendant concerning the plaintiff. Issue was taken upon each of these claims, and, upon trial to a jury, the court sustained defendant's motion to withdraw from its consideration the question of plaintiff's damages for libel. Upon the other issues, a verdict was returned for plaintiff for $1,776.40, and judgment was entered accordingly. Both parties have appealed; but, owing to the order in which the appeals were perfected, we shall designate the defendant alone as appellant, and plaintiff as appellee. Both appeals will be disposed of in the following opinion.—*Reversed and remanded.*

*T. C. Mahon* and *Redmond & Stewart,* for appellant.

*Dawley & Jordan,* for appellee.

WEAVER, C. J.—I. The defendant is a dealer in advertising novelties, and the plaintiff a person of considerable experience as a sales agent for that line of goods and merchandise. On October 3, 1908, these parties entered into a written contract, by which defendant employed plaintiff as its agent to sell its goods in the state of Iowa and such other territory as might thereafter be agreed upon. The contract was in writing, and provided for payment for plaintiff's services in the form of commissions at specified rates upon sales made or negotiated by her or by her subagents or by others within the described territory. The writing was drawn upon a blank form, containing certain printed matter, in which was a provision binding the agent to give to the principal exclusively her entire time and best effort to the promotion of its business. In the contract as sued upon, and as produced by plaintiff in the trial, the printed provision above referred to was erased. Plaintiff's evidence is to the effect that this erasure was made at the time of the execution of the contract, and that such provision constituted no part of her agreement. . The testimony on part of defendant is to the contrary effect, it being insisted that the contract as executed showed no

change or erasure in the printed form. The evidence upon this point was clearly sufficient to take the question to the jury; and, for the purposes of the appeal, it must be taken as established that the contract was, in form and substance, as alleged by the plaintiff. By the terms of this agreement, the services of the plaintiff were to begin January 1, 1909, and continue for the term of one year. The relations so assumed continued without any serious interruption or misunderstanding until about February 9, 1909, when plaintiff secured from the "Redpath Chautauqua System" an order for 3,000 "horse covers," at an aggregate price of $1,650. This order was sent to the defendant, but was followed quite soon by a countermand from the Redpath company. A spirited, triangular correspondence ensued between plaintiff, defendant, and Redpath until, on February 23, 1909, defendant wired plaintiff as follows (omitting address and signature): "Return your samples immediately. Your contract is canceled."

It may also be said here that defendant refused to recognize the right of Redpath to countermand or cancel the order for horse covers, and that such controversy was finally cured by a compromise, in which defendant made some concession in the matter of the price to be paid for the goods.

On even date with its telegram discharging plaintiff, defendant wrote her a letter, saying it had taken such action because it found that plaintiff was not working in its interest, and that it "could not get along with her under such conditions."

Replying to these communications, plaintiff wrote, saying:

"I will not resist the canceling of the contract at all, providing you pay me what I have already earned. There are various matters in last year's work still unsettled. Then I have put four agents at work in the field. Do you propose to cancel their contracts? Or do you propose to continue their work according to this contract? * * * I have discontinued sending orders to you, and will instruct my agents to send no more orders to you, but I will not send in your samples until I further hear from you. There is considerable due me, and I propose to have it."

No settlement being effected, this action was begun, and has now been pending for a period of 11 years. It has been in this court once before, when certain rulings by the trial court were

reversed in plaintiff's favor, and cause remanded for trial upon the merits. See 179 Iowa 397.

The defendant's argument upon its own appeal is very largely devoted to the proposition that plaintiff did not perform her agreement to faithfully serve the interest of her principal, but wrongfully sought to recall the order given for the horse covers, to enable her to deal with some other house from which she could obtain a larger commission; and that, by reason of such breach of duty on her part, defendant was justified, as a matter of law, in canceling the contract. There are at least two sufficient reasons why we cannot so hold. The evidence from which this court is asked to draw the conclusion that plaintiff was unfaithful to her employer is not undisputed. If she and the Redpath representative with whom she dealt tell the truth, she did not act in bad faith with defendant, and was in no manner responsible for the countermand, or attempted countermand. Her conduct after receiving and forwarding the order is easily explainable on the theory of her natural anxiety to prevent the loss of the business to the defendant, and thereby avoid also the loss of her commission. Even if it may be said that a more uncharitable conclusion could be drawn from the testimony, such contention is one to be addressed, and doubtless it was addressed, to the jury. It is not, however, within the province of this court to interfere with the verdict on such ground.

1. TRIAL: estoppel to question special finding.

In the next place, the record shows that, at the instance and request of appellant, the trial court submitted special interrogatories, to be answered by the jury. Among them was the following:

"Interrogatory 6. Did the defendant, within the terms of the contract, have a right to terminate and cancel the contract on February 22, 1909?"

To this question the jury answered, "No."

Whether, as an abstract proposition, this question was one which ought to be made the subject of a special finding by the jury, we need not consider or decide. It is sufficient that it was submitted at defendant's request, and such a request implies a concession of its propriety, for the purposes of the case. Under

such circumstances, the appellant cannot be heard to ask that the finding shall be disregarded by the court.

We shall not take time to review the record relating to the items of commission which plaintiff claims to have earned, and upon which the jury found in her favor. In so far as they were the subject of dispute, there was evidence sufficient to require their submission to the jury, which appears to have been fairly instructed thereon.

II.    The second cause of action relied upon by the plaintiff is the alleged damage suffered by her by reason of her wrongful discharge from defendant's service. The jury found for the plaintiff in this respect, and, as appears from 2. MASTER AND SERVANT: measure of damages for wrongful discharge. its special findings, assessed damages in her favor on this account in the amount of $750. The defendant takes the position that this finding is without sufficient support in the evidence, and we think that the assignment of error in this respect must be sustained. Had plaintiff been employed to serve defendant for a stated wage or salary, her damages, if any, for a wrongful discharge could be easily ascertained, under familiar rules; but, as her compensation was to be in the form of commissions on her sales, her remedy and the measure of her recovery are less obvious. No claim is made in this case for mere loss of time. So far as shown, plaintiff has never been without employment as profitable and desirable as that from which she was discharged. The loss to plaintiff, if any, was not a loss of wages or earnings, in the ordinary sense of the term, but a loss of profits (*Hichborn, Mack & Co. v. Bradley,* 117 Iowa 130); and there seems to be an entire lack of evidence from which such alleged loss can be ascertained, with reasonable certainty. It is perhaps possible to reach a fair estimate of the amount of sales made for the defendant by plaintiff and her subagents up to the time she was discharged, and from such fact a somewhat speculative conclusion might be arrived at, as to the business she would have done and the gross earnings she would have made in commissions during the remainder of the contract period; and such is the argument on which her counsel rely, to sustain the jury's assessment of $750 damages. But it must not be forgotten that, as already suggested, the measure of her recovery, if any, on

this item is not the amount of the commission she had lost, but the amount of profits she would have acquired therein. Manifestly, her commissions under the contract of employment were not all profit. She conducted the business of procuring orders at her own expense. The testimony shows that, in the work of obtaining orders, she presumably traveled from town to town and city to city, soliciting business from customers throughout the state. The cost of transportation, hotel bills, and other necessary expenditures must have assumed very considerable proportions. The value of her own time as an experienced and successful sales agent is also not to be overlooked (*Klingman & Scoular v. Racine-Sattley Co.*, 149 Iowa 634, 637). Concerning these and other items of like nature, no evidence was offered or received; and without such showing, an estimate or finding of recoverable damages is little better than a guess. For the reason stated, this item of plaintiff's claim for damages should not have been submitted to the jury.

III. We now turn our attention to the plaintiff's appeal from the order of the trial court withdrawing from the jury plaintiff's claim for damages for libel.

3. LIBEL AND SLANDER: charge of unfaithfulness to employer: effect.

The alleged libel is contained in a letter, written and published by the defendant during the controversy, the history of which is sufficiently revealed in the foregoing paragraphs of this opinion. As will be seen by reference to said paragraphs, the defendant, by written contract, engaged the plaintiff to act as its sales agent for one year, beginning January 1, 1909; and, on February 23, 1909, it discharged her from its service, declared the contract canceled, and ordered her to return the samples which had been furnished her. On the same day, by one of its officers, defendant wrote and mailed to numerous other dealers and employers of sales agents a communication in words following:

"THE SCIOTO SIGN COMPANY

"Signs : Calendars : Novelties

"Kenton, Ohio,

"February 23, 1906.

"Gentlemen:  We desire to inform the various members

of the National Association of Adv. Novelty Mfgrs., that we have discharged Miss C. V. Burghardt from our employ for the reason that she is one of these salesmen, doing what probably you have other salesmen doing with you, i. e., taking orders, for everybody wherever she gets the most commission and taking orders from our extensive line we have given her, only to send them to other parties.

"Only recently she sent in an order for a large number of horse covers and when she found that she would not get as much commission as she thought she would get she wanted the order returned so that she might give it to some other house. This in spite of the fact that she has contracted to give her best efforts toward promoting our interests, and we think it due the members of this association that they should know of her actions.

"We learned upon inquiry that she is now representing a half dozen different houses and in all probability it will be news to some of those who receive this letter that she is under contract with us. Within the last month it has been our pleasure to report to several members of this association the names of parties who have been representing them also representing others, and we believe that if this feature of our association would be given more attention, we would succeed in weeding out these faithless salesmen who only seek to feather their own nest without any care for the house they are supposed to represent. We can give further details to anyone interested and shall be glad to do so at any time.

"Yours truly,

"The Scioto Sign Co."

Plaintiff alleges that the statements and representations made in said letter, that defendant had discharged her from its employment because she had taken orders for sales of defendant's goods, only to send them to other dealers, and that she had taken an order for horse covers, and then sought to have such order returned or canceled, to enable her to give it to some other house from which she could get larger commissions, were false; and that said charges were defamatory and libelous, and intended to accuse the plaintiff of bad faith and dishonesty in her business relations, and to classify her with faithless sales-

men who feather their own nests without any care for the houses they are supposed to represent.

She further avers that the statements in said letter, reflecting upon her integrity and her faithfulness to her employers, were made with malicious intent to injure her and damage her business, and bring her into disrepute and prevent her from obtaining other employment as a salesman. Because of these alleged wrongs, she demands recovery of damages, actual and exemplary.

Answering this claim, defendant admits having employed the plaintiff as a sales agent, and having afterwards discharged her from its service; and avers that the alleged libelous letter was sent out by it to fellow members of an association of dealers who were pledged to protect each other as to the work of their agents and employees, and that said letter was intended simply as a notice to said association and its members that plaintiff had not kept her obligation to the defendant to promote its interest as she ought to have done. Further, and by way of mitigation, it is alleged that the matters and things stated in the letter were, by the defendant, its officers and agents, believed to be true.

By way of further full defense, the answer pleads the truth of the statements contained in the letter.

The motion made by defendant and sustained by the court, to withdraw from the jury the charge of libel, assigns as ground therefor:

1. That the letter is not libelous *per se.*
2. No special damages therefrom have been proved.
3. The letter is privileged, and there is no proof of malice.
4. The truth of the letter has been established.

The answer, as will be seen, is, in effect: (1) A denial; (2) matter in mitigation; and (3) justification. There is no plea of privilege, nor do we understand appellant in argument to now assert such defense. See Code Section 3593; *Brandt v. Story,* 161 Iowa 451, 456. In any event, if we assume that, for the purposes of this appeal, the defense would be available without a plea of that kind, we think it would have to be held, as a matter of law, that no fact or facts are shown on which either court or jury could properly find that the alleged libelous language was privileged. The argument for the defense is chiefly

directed to the propositions: (1) That the letter written by the defendant is not *libelous per se;* and (2) that the statements therein are proven to be true. The ruling by the trial court indicates that such was also its reason for refusing to submit the claim to the jury.

We cannot concur in that conclusion upon either defense. The letter is clearly libelous *per se.* To constitute such libel, it is not necessary that the language complained of should charge the plaintiff with crime or unchaste conduct. It is enough if it appear that the language used imputes to the plaintiff acts or qualities having a natural tendency to injure her in her business, trade, or profession, or to expose her to public contempt and condemnation. *Children v. Shinn,* 168 Iowa 531, 543; *Morse v. Times-Republican Ptg. Co.,* 124 Iowa 707, 712.

This letter was written and published with express reference to the plaintiff by name, accusing her of dishonest conduct and unfaithfulness to her employer in the transaction of their business. It was sent out to many dealers conducting a business similar to the defendant's, and canvassing for business through sales agents. Its clear effect, if believed, would be to injure the plaintiff, and prevent her from obtaining employment, and expose her to public ignominy and disgrace. An accusation of such nature is, in the law of libel, presumed to be false, and the burden is on the defendant to justify its charge by proof of its truth. On this issue, the evidence was such that the jury could properly have found for the plaintiff, and the trial court erred in directing a verdict thereon in defendant's favor. The letter being libelous *per se* in charging the plaintiff with dishonesty and unfitness for employment in her business as a sales agent, actual damages are presumed, and she was not required to allege or prove special injury therefrom. *Trimble v. Tantlinger,* 104 Iowa 665; *Dorn & McGinty v. Cooper,* 139 Iowa 742; *Andreas v. Hinson,* 157 Iowa 43.

Nor is there any burden upon the plaintiff, in the absence of a showing of privilege, to prove malice in the publisher of words which are libelous *per se.* Malice is presumed. If it be denied by him, and he offers evidence in denial, the issue of fact so raised is also for the jury. But plaintiff does not rest her charge of malice solely upon the legal presumption. The corre-

spondence between the parties before plaintiff's discharge by defendant discloses not a little malevolent spirit on part of the latter. The dispute over the order for horse covers had not proceeded far before the defendant, by its secretary, wrote plaintiff that it would permit no salesman to bully it, and warned her that, while the writer was disposed to be fair with her, yet, "if you make him mad, he will pursue you to the devil." In another letter, he clearly foreshadows an intent, if she did not yield the controversy, to do just what he did do: denounce her to other employers of sales agents in the business in which she was earning her living. He says to her:

"You must know that this kind of business cannot be confined to one firm. It is but natural we should *let others know your actions* and to say the least such conduct will not reflect any in your credit. * * * We had hoped when we wrote the last letter that this would be the end of this incident, but your telegram this morning revived it again and we can readily see what your motive is in doing so. It isn't fair, it isn't right, it isn't honorable, and when anything does not meet these requirements here, the Scioto Sign Company, with all its *power and influence,* will fight to the bitter end."

Sprinkled elsewhere through its letters are threats of suit for damages, and many expressions directly and indirectly accusing plaintiff of faithlessness to defendant's interests, and giving evidence of a high degree of indignation toward the plaintiff, all of which the jury could well take into consideration as bearing on the question of malice.

Further discussion is unnecessary. We are satisfied that plaintiff was entitled to go to the jury on this issue, and the order of the trial court directing a verdict cannot be sustained.

For the reasons stated, the judgment of the district court must be reversed on both appeals, and cause remanded for a new trial.—*Reversed and remanded.*

LADD, STEVENS, and ARTHUR, JJ., concur.