JOHN McWILLIAMS, Appellee, v. HENRY C. EBLING, Appellant.

No. 47379.

(Reported in 35 N. W. 2d 768)

FEBRUARY 8, 1949.

James H. Graven, of Greene, and R. W. Zastrow, of Charles City, for appellant.

Shepard & Shepard, of Allison, for appellee.

SMITH, J.—Plaintiff's petition is in two counts alleging substantially the same slanderous statements claimed to have been made on two occasions: the first, on January 14, 1946, at the annual meeting of stockholders of the bank of which plaintiff was president and defendant a stockholder; and the second, on June 18, 1947, at a country crossroad where a group was discussing a drainage project on a near-by farm.

The statements were made directly to plaintiff and accused him of stealing certain elevator stock, taking five thousand dollars from the bank, and of being a thief and a liar. Others were present on both occasions and heard some, at least, of the statements. Those who testified said their opinion of plaintiff was not changed by defendant's charges. The sufficiency of the evidence of the making of the alleged statements is not questioned.

Plaintiff testified he spent "many sleepless nights over some of the incidents that has happened" between defendant and himself and that the same was true of the incident of June 18, 1947. His wife said "he was a wreck" that evening.

Plaintiff, sixty-nine years old, had been president of the Aredale State Bank over twenty years and was re-elected at

the January 14, 1946, meeting. He was a man of considerable property and presumably of considerable prominence in the community. Defendant, seventy-eight, was a farmer, apparently of substantial means, had been a director of the bank for several years, and president of the Co-operative Elevator Company, the stock of which it is alleged he accused plaintiff of stealing. Plaintiff's daughter had married defendant's son and his son had married defendant's daughter. There had been earlier friendship between the families but "it began to ebb" in 1928 when plaintiff was a member of the board of township trustees and defendant accused the trustees of putting into their own pockets money that had been paid by the town of Greene for some road improvement. These facts appear from the testimony of plaintiff and are not denied.

No evidence was offered to contradict the testimony of the making of the statements complained of. Defendant's attorneys offered proof that he was under voluntary guardianship—not, however, for the purpose of substituting the guardian as defendant, but to claim defendant was an incompetent against whom a judgment could not be rendered. The alleged appointment was May 12, 1948, the trial June 9, 1948. The court ruled the offered evidence did not show defendant was incompetent, he having himself signed the application for guardianship. No error is assigned on this ruling.

His attorneys then offered Dr. Roder as a witness to show that defendant, because of his physical and mental ailments, was incapable of appearing as a witness. When the offer was made the doctor had already, without objection, testified: "I don't believe I can say whether he [defendant] could be able to appear * * * as there are sometimes when I am sure he is rational and others when I am sure he isn't." The court sustained the objection to the offer. Error is predicated on this ruling.

I. Defendant-appellant first argues that the court erred in refusing to permit Dr. Roder to testify to the defendant's condition at the time of trial as explaining his (defendant's) failure to testify and as "bearing upon the background of the affair." It is urged: "There being no actual damages shown the

only question, if any, remaining would be one of malice, and the physical and mental condition of the defendant at the time of trial and for several years prior. * * * would have been a help to the court in determining whether or not any malice was in fact established as there was none plead or proved."

Two points are involved in this argument: (1) That defendant's condition at time of trial was material as explaining his failure to be present and testify, in order that no inference be drawn "that his testimony if available would be unfavorable to his cause"; and (2) that his condition at the time the alleged slanderous statements were uttered might be shown to disprove malice.

As to the first it should be said no contention is made that defendant's presence at the trial was necessary to the proper conduct of his defense. There had been no request for delay on the theory he might be present and able to testify or assist in the defense at a later time.

It is not clear what unfavorable inference it is thought the court may have drawn from defendant's absence and failure to testify since there was no suggestion or showing as to what he would testify to, such as would have been made if postponement were being sought on account of the absence of an important witness whose presence might be possible at a later time. However, the argument indicates that *malice* was the one issue upon which it was feared unfavorable inference might be indulged by the court—whether implied malice or actual malice is meant does not appear. The distinction between them is pointed out in Ryan v. Wilson, 231 Iowa 33, 51, 300 N. W. 707.

██ ██ The issues here were simple. Plaintiff did not ask for exemplary damages or plead actual malice as he would have had to do to recover them. *Implied* (or legal) malice, necessary to establish a right of action, arises from the mere absence of legal excuse where the alleged defamatory words were, as here, actionable per se. It is not necessary to allege or prove such malice. See 53 C. J. S., Libel and Slander, sections 8, 76, 166, 187, as bearing on these propositions. See also Berger v. Freeman-Tribune Pub. Co., 132 Iowa 290, 293, 109 N. W. 784; Morse v. Times-Republican Print. Co., 124 Iowa 707, 719, 100

178

N. W. 867; Brandt v. Story, 161 Iowa 451, 457, 143 N. W. 545; Burghardt v. Scioto Sign Co., 191 Iowa ·384, 392, 179 N. W. 77.

The second point urged in favor of Dr. Roder's testimony must refer to *actual* or *express* malice. The malice implied from the fact that the words spoken were actionable per se (as e.g., charging plaintiff with criminal conduct), in· absence of a plea of privilege, could be met only by evidence in justification or, perhaps, mitigation. These issues were defensive and were not pleaded by defendant as they would have to be to make such evidence admissible. Rhynas v. Adkisson, 178 Iowa 287, 295, 159 N. W. 877; sections 619.7, 619.8, Code, 1946; Rule 101, Rules of Civil Procedure; Mielenz v. Quasdorf, 68 Iowa 726, 730, 28 N. W. 41; Hahn v. Lumpa, 158 Iowa 560, 562, 138 N. W. 492; Brandt v. Story, 161 Iowa 451, 458, 143 N. W. 545.

As already pointed out, there was no allegation of actual malice nor any prayer for exemplary damages. "Actual malice or malice in fact is only material as establishing a right to recover exemplary damages or to defeat plea of privilege." Bond v. Lotz, 214· Iowa 683, 686, 243 N. W. 586, 587. No evidence was required or permissible to disprove what was not alleged. Consequently no unfavorable inference could arise from not producing it.

Furthermore, there was no offer to prove defendant's condition *at the time the alleged slanderous statements were made.* That seems to be an afterthought in argument. Counsel for defendant in response to an inquiry by the trial court as to whether the only question was as to defendant's ability to appear as a witness replied: "That is what I am getting at." The offer itself was clearly so limited: "Well the defendant offers to prove by the witness Dr. C. F. Roder, that the defendant is now under guardianship and that the defendant Ebling was and is now incapable of appearing as a witness because of his physical and mental ailment."

This was not a trial to a jury. We are not prepared to assume, under the issues and proof shown, that the trial court drew any unfavorable inferences from defendant's failure to appear and testify, or that there was any reversible error in

limiting the doctor's testimony. The authorities cited by defendant are not applicable here. They pertain to the well-established rule prevailing as to the inferences arising when a party fails to produce evidence within his control.

II. The defendant urges that the damages allowed in the sum of $500 were excessive. We cannot think this contention is well founded. The case was tried to the court. It is not triable here de novo. Assuming, as we must, that there was sufficient competent evidence to support a judgment for damages we cannot say the amount allowed or the circumstances of the trial indicate any such abuse of discretion as to require or justify reversal.

Defendant-appellant inaccurately assumes there was no evidence of actual damages. It is true there was no evidence of actual *monetary* damage. But the accusations leveled at plaintiff imputed criminality and were actionable per se. Damages from the publication of such charges are presumed. Burghardt v. Scioto Sign Co., supra (191 Iowa at page 392, 179 N. W., page 77); Simons v. Harris, 215 Iowa 479, 245 N. W. 875. They were uttered in the presence of plaintiff's friends and neighbors. Plaintiff and his wife testified in effect that they caused plaintiff mental suffering. Even if all who heard them testified to disbelief (but all did not) plaintiff could not know his friends were unimpressed. There is no evidence that they, or any of them, ever assured him of their unshaken confidence in him. Worry and mental pain were practically inevitable and proper elements to be considered. Davis v. Mohn, 145 Iowa 417, 421, 124 N. W. 206.

It was for the trier of fact to measure in dollars and cents, as best he could, the extent and value of the damage. Such damage is not capable of mathematical computation. Jensen v. Damm, 127 Iowa 555, 559, 103 N. W. 798. We think there was no error in fixing the amount.

The judgment is affirmed.—Affirmed.

All JUSTICES concur.