SMITH and another, Respondents, vs. RAILROAD COMMISSION OF WISCONSIN and another, Appellants.

*May 31—June 25, 1919.*

*Public utilities: Street railways: Order fixing rates: Validity: Emergency: Review.*

1. In an action to set aside an order of the railroad commission fixing rates for street-car fares on the lines of the defendant street railway company in La Crosse, it is *held* that no "emergency" existed for making the order under sec. 1797—28, Stats., but that the order, though containing the word "emergency," was valid as a general rate order under sec. 1797—12.
2. To justify the trial court in disturbing an order of the commission made in due course, it must be established by clear and satisfactory evidence that the order was unlawful or unreasonable.

APPEAL from a judgment of the circuit court for Dane county: E. RAY STEVENS, Circuit Judge.    *Reversed.*

This appeal was from a judgment entered on the 31st day of March, 1919, setting aside an order of the *Railroad Commission of Wisconsin* entered on the 12th day of September, 1918, fixing rates for street-car fares on the lines of defendant *Wisconsin Railway, Light & Power Company* in the city of *La Crosse,* Wisconsin.

The *Wisconsin Railway, Light & Power Company,* hereinafter in this opinion referred to as the *Company,* filed with the *Railroad Commission* on July 9, 1918, its petition setting forth that since June 30, 1913, the petitioner had furnished street railway service in the city of *La Crosse* without a reasonable return on its investment, and during the year 1917 and thereafter the cost of furnishing such service had greatly increased.    It is alleged in the petition that the *Company* had been compelled to meet an unusual and unexpected rise in the cost of material and labor, which resulted in a decided decrease of net revenue and a large and increasing deficit in the operation of such railway.    It is further alleged that to meet such increases in cost of operation it was necessary that rates be permanently increased and also a temporary emergency rate be made effective immediately.    Relief was asked for in the form of permanent increase in rates and also an emergency temporary rate.

The *Commission* on July 10, 1918, made an order for hearing, giving ten days' notice of such hearing, and jurisdiction was obtained by the *Commission* to give general relief under sec. 1797—12, Stats., as well as emergency relief under sec. 1797—28.    The matter was heard July 23, 1918, pursuant to notice and testimony presented by all parties. The *Commission* took the matter under advisement August 12, 1918, and filed its decision and order September 12, 1918.

Suit was brought to set aside the order of the *Commission.* Upon the trial the record before the *Commission* was put in evidence, witnesses sworn, and testimony taken.    All the

proceedings had in the circuit court were then returned by the court to the *Commission* pursuant to the statute and the matter again considered by the *Commission.* The *Commission* on January 21, 1919, reported to the court and discussed the questions under consideration, and held that the *Company* was entitled to relief and that the order was lawful and reasonable and should stand. The court took the matter under advisement, and on March 31, 1919, signed and filed findings and conclusions vacating and setting aside the order of September 12, 1918, and declared such order to be unlawful on the ground that no emergency existed under sec. 1797—28 for making the order, and judgment was based upon the ground that no emergency existed.

The *Company* filed requests for findings of fact and conclusions of law and requested a finding that the rates were insufficient and the return inadequate, and that it would be an injustice to set aside the order of the *Commission,* which requests were refused. ·

.The *Company* operates a street railway at *La Crosse,* a street railway and electric light and power plant at Winona, Minnesota, a hydraulic electric power plant at Hatfield, and transmission lines connecting such plant with the Winona and La Crosse properties, and also an auxiliary steam plant in the city of Winona, and owns a reserve or stand-by plant in the city of *La Crosse,* the transmission system being tied in with the transmission system of the Wisconsin–Minnesota Light & Power Company at Bluff Siding and with the same company's light and power plant at *La Crosse,* so that an interchange of current is effected between the combined properties of the two companies. The steam plant at *La Crosse* was the primary source of operation when the *Company* was in the hands of former owners and before the hydraulic electric plant at Hatfield was available. A portion of the power used by the *Company* is purchased from the Wisconsin–Minnesota Light & Power Company, and so far as used at *La Crosse* is brought from Bluff Siding over the transmission line owned by the *Company.*

The engineers of the *Commission* made a valuation of the
street railway property as of June 30, 1911, giving the total
cost of reproduction new as $423,402, and additions from
the date of such valuation to December 31, 1917, making the
total valuation at said date $615,510.    It was conceded on
the hearing that the *Company* was entitled to a return of
seven and one-half per cent. upon its investment, the *Company* contending that it was entitled to such percentage of
return upon a valuation in excess of $700,000, the city contending that the stand-by plant at *La Crosse* was of no value
and should not be considered for rate-making purposes,
claiming that the valuation should be placed at $529,782, and
for the purpose of an emergency case the city's expert
claimed that the valuation should be $500,000.    The *Commission* in its original decision allowed a valuation of
$545,510, thus eliminating the value of the stand-by plant at
*La Crosse*.    The *Commission's* expert, however, testified
that the stand-by plant should not be eliminated, and after
the resubmission to the *Commission* it reported back to the
court conceding that the value of the stand-by plant should
have been included.

The *Company's* exhibits before the *Commission* show the
earnings of the railway company for a number of years.
These accounts treat the railway system separately from the
balance of the *Company's* operation and charge such system with power at a fixed price.    These figures are shown in
exhibits introduced.

According to the *Commission's* decision the deficit from a
seven and one-half per cent. return for the year ending June
31, 1916, was $230.58; for the year ending June 30, 1917,
$13,804.26; for the half year ending December 31, 1917,
$8,236.67; and for the half year ending June 30, 1918,
$10,111.95.    The deficit, according to the *Company's* figures, for the month of October, 1918, was $5,185.65, and
for the month of November, 1918, $4,355.12.    The deficit

for the five-months period beginning July 1, 1918, as based upon the *Commission's* figures, was $24,823.86.

It is undisputed that the *Company* has never declared or paid a dividend to its stockholders. Evidence was introduced showing the increase in wages and cost of material entering into every phase of operation. The evidence shows that the wages of trainmen were largely increased between July 1 and October 1, 1918.

For the appellant *Railroad Commission* there was a brief by the *Attorney General* and *E. E. Brossard,* assistant attorney general, and oral argument by *Mr. Brossard.*

For the appellant *Wisconsin Railway, Light & Power Company* there were briefs by *George H. Gordon* of La Crosse and *Miller, Mack & Fairchild* of Milwaukee, and oral argument by *Edwin S. Mack.*

For the respondents there was a brief by *Charles H. Schweizer* and *J. E. Higbee* of La Crosse, counsel, and *O. J. Swennes,* city attorney, and oral argument by *Mr. Schweizer* and *Mr. Swennes.*

KERWIN, J. The court below disposed of the case upon the ground that no emergency existed for making the order under sec. 1797—28, Stats., which provides:

"The commission shall have power, when deemed by it necessary to prevent injury to the business or interests of the people or railroads of this state in consequence of interstate rate wars, or in case of any other emergency to be judged of by the commission, to temporarily alter, amend, or, with the consent of the railroad company concerned, suspend any existing passenger rates, freight rates, schedules and orders on any railroad or part of railroad in this state. Such rates so made by the commission shall apply on one or more of the railroads in this state or any portion thereof as may be directed by the commission, and shall take effect at such time and remain in force for such length of time as may be prescribed by the commission."

Five members of this court are of opinion that upon the

facts disclosed by the record no emergency existed within the meaning of the statute for making the order under sec. 1797—28, while two members hold that such an emergency did exist.

Starting with the proposition that no emergency existed, therefore the order was not valid as an emergency order under sec. 1797—28, the question arises whether the order was valid as a general rate order under sec. 1797—12.

The order upon its face is in substance the same as a general rate order made under sec. 1797—12, except it contains the word "emergency." The *Commission* seems to have understood that the application was not only for emergency relief but for a general order as well. In its report it is said:

"The petition seems to have asked both emergency relief and the treatment of the case as in due course. We concluded in our opinion of September 12, 1918, that a case demanding emergency relief was presented, a conclusion which has been emphasized by operating results. On the other hand, we believe that it was desirable from a public standpoint to retain complete jurisdiction over the street railway rates in *La Crosse,* treating the present rates as emergency rates, and defer a final order fixing street-car fares in that city until a return of something like normal conditions."

An order under sec. 1797—12 may be in form substantially the same as an order under sec. 1797—28 with the exception of the word "emergency."

The order and report of the *Commission* seem to indicate that the *Commission* intended to give relief for a situation not necessarily permanent. The order provided that the *Company* be "authorized to suspend the schedule of rates at present in effect on its *La Crosse* street railway system and substitute therefor" the schedule prescribed in the order.

The petition was broad enough to cover emergency rates and general rates. Ten days' notice of hearing was given and the matter heard in accordance with the provisions of sec. 1797—12. All parties interested were represented and testimony taken at great length. The *Commission* had the

matter under advisement for about a month.   While the order was designated an emergency order, it is quite plain from the notice given and all the proceedings had, as well as the form of the order itself, that the *Commission* intended to cover a situation which, while it might not be of long duration, still the order would be sufficient and proper as an order in due course.   The proceeding for review of the order of the *Commission* is statutory, and unless it be established that the order is either unlawful or unreasonable it cannot be disturbed.

In the instant case the petition was broad enough to cover a proceeding for either emergency relief or relief in due course under sec. 1797—12.    It is clear from the record that the *Commission* had jurisdiction to proceed, and that all parties interested were before the court and a full and exhaustive hearing had, and the hearing covered all issues in the matter, and the procedure was the same as in other cases where a general rate hearing is had before the *Commission*. There was ample credible evidence in the record to show that the income was not sufficient to pay a reasonable return on the investment after allowing three per cent. depreciation. It is unnecessary to go into a discussion of the facts and figures in the record, which are very voluminous and which appear to have been carefully considered by the *Commission*.

Treating the order as an order in due course under sec. 1797—12, it cannot be said that it was either unlawful or unreasonable.   While, as before observed, the majority of the court is of opinion that an emergency, within the meaning of sec. 1797—28, did not exist, the whole court is agreed that the order is valid as an order in due course under sec. 1797—12.   Under the well established rule, in order to justify the court below in disturbing the order it must be established by clear and satisfactory evidence that the order complained of was unlawful or unreasonable, and it has been held by this court that the words "clear and satisfactory evidence" used in the statute must be applied in the same sense

as they are in describing the proof necessary to establish fraud or mistake in a written instrument.  *Minneapolis, St. P. & S. S. M. R. Co. v. Railroad Comm.* 136 Wis. 146, 116 N. W. 905.  It is equally plain from the record that the order cannot be held unlawful.

The court below disposed of the case on the ground that no emergency existed under the statute and did not consider the question whether the order was good as an order in due course under sec. 1797—12, and the question arises whether the case should be remanded to the court below with instructions to pass upon the question.   The court is of opinion that this is unnecessary, since the whole matter was considered and fully litigated on all questions, and upon the record the order of the *Commission* should have been affirmed by the court below as an order in due course.

*By the Court.*—The judgment of the court below is reversed, and the cause remanded with directions to enter judgment affirming the order of the *Railroad Commission.*