FRIENDS OF THE EARTH, Respondent, v. PUBLIC SERVICE COMMISSION, Appellant. [Case No. 75–542.]†
CITY OF MADISON, Respondent, v. PUBLIC SERVICE COMMISSION, Appellant. [Case No. 75–543.]†

*Nos. 75–542, 75–543. Argued May 4, 1977.—*
*Decided June 1, 1977.*
(Also reported in 254 N.W.2d 299.)

† Motion for rehearing denied, without costs, on July 19, 1977.

394

For the appellant the cause was argued by *Steven Levine,* assistant chief counsel, with whom on the briefs were *Bronson C. La Follette,* attorney general, and *Steven M. Schur,* chief counsel.

For respondent, Friends of the Earth, there was a brief and oral argument by *Robert H. Owen, Jr.,* of Madison.

For respondent, City of Madison, the cause was argued by *William A. Jansen,* deputy city attorney, with whom on the brief was *Henry A. Gempeler,* city attorney.

For respondent, Madison Gas and Electric Company, there was a brief by *John A. Hansen, Richard K. Nordeng* and *Stafford, Rosenbaum, Rieser & Hansen,* and oral argument by *John A. Hansen,* all of Madison.

ABRAHAMSON, J.   The city of Madison (City) and Friends of the Earth (FOE) instituted separate proceedings to review pursuant to ch. 227, Stats., an order of the Public Service Commission (PSC) authorizing the Madison Gas & Electric Company (MG&E) to increase on an interim basis the rates charged to its customers for electric and natural gas service pending the deter-

mination of permanent rates. The circuit court reversed the order and remanded the matter to the PSC on the ground that the PSC had improperly failed to include in its temporary order a condition providing for refund to customers of any excess of the temporary rates over the rates ultimately found to be just and reasonable in the PSC's final order. From this order the PSC has appealed.

## FACTS

On March 5, 1975, MG&E filed an application with the PSC for authority to increase its rates for electric and natural gas service on an interim and permanent basis. MG&E requested that, following the initial public hearings in the matter, it be authorized on an interim basis to place in effect an increase in electric and gas service rates sufficient to provide the level of net earnings on equity capital most recently determined by the PSC to be just and reasonable. Several days of hearings were held at Madison in April, 1975, in which FOE, as well as Wisconsin's Environmental Decade, not a party to this appeal, participated. On June 16, 1975, the PSC issued its order granting interim rate relief in the amount of $6,861,000, to be implemented by a charge of .477 cents per kilowatt hour for electricity and a 7.33 percent surcharge on all bills for gas utility service. The order provided that both of the authorized charges "shall be and shall remain in effect only until the effective date of the Order establishing permanent rates herein." The June 16th order contained no condition or other provision for refund of amounts collected under the authorized charges if it appeared on conclusion of proceedings that the charges exceeded just and reasonable rates.

FOE, the City, and Wisconsin's Environmental Decade thereafter applied to the PSC for rehearing, which applications were denied by the PSC's order dated July 17,

1975. The basis of the PSC's denial was its position, taken in several previous cases, that applications for re-hearing were inappropriate until the PSC had rendered its final order in the proceeding.

FOE and the City thereafter filed petitions for review in the circuit court, setting out numerous specifications of error, both procedural and substantive, relating to proceedings before the PSC.[1] By stipulation of the parties, the proceedings on the two petitions for review

---

[1] FOE's petition for review specified some sixteen claims of error. Briefly summarized, the procedural objections were that the PSC had relied upon an *ex parte* affidavit from a member of its staff submitted after hearings were closed; that the PSC refused to issue subpoenas to certain witnesses whom FOE wished to examine; that the PSC refused to allow FOE an opportunity to comment on the draft of the June 16, 1975, order before issuing it; that the PSC had granted the interim rate increase, which was greater than had been requested by MG&E, without a full and fair hearing; that notice of the hearings had been inadequate; and, that the PSC had perfunctorily denied several meritorious objections raised by FOE, the City, and Wisconsin's Environmental Decade. FOE's substantive objections included a claim that the June 16th order was improperly made effective immediately al-though no emergency had been found by the PSC to exist; the claim that the order continued in effect a fuel adjustment clause which was beyond the PSC's authority to allow in that it pro-vided for routine automatic rate increases without prior hearing; that the PSC inflated the percent of equity capital in MG&E's capital structure, thereby increasing the cost-of-capital component of MG&E's revenue requirements; that various costs associated with plant construction in progress or contemplated, particularly those associated with the planned Koshkonong nuclear generating station, were improperly considered in calculating the utility's rate base and in other ways, resulting in unlawful discrimination in favor of future users of electric power and against MG&E's present customers; and, that the majority of the PSC's ultimate findings of fact were not supported by substantial evidence.

The City of Madison's petition for review claimed that a full and fair hearing had not been held before the PSC, that notice of the hearings had been inadequate, and that the PSC had erred in its "consideration of many Koshkonong-related expenses" in passing on MG&E's application.

were consolidated. The PSC and MG&E filed motions to dismiss the petitions for review on the ground that the court lacked jurisdiction because the June 16, 1975 order of the PSC, by reason of its interim nature, was not a decision within the meaning of sec. 227.15, Stats. The circuit court issued an order to show cause bringing the motions to dismiss on for a hearing on October 13, 1975. It appears that unreported argument on the motions was held on October 13th and that the court then inquired of counsel for the PSC why the June 16th order did not contain any escrow or refund provisions against the contingency that the interim rate relief authorized would ultimately be found improper. The record contains a letter from Steven M. Schur, Chief Counsel to the PSC, dated October 29, 1975, responding to the court's inquiry and advising the court that the omission of such a refund provision in the order had not been deliberate, and that the matter had not been specifically presented to or considered by the PSC. The letter continued:

". . . The Commission staff, in preparing an order for Commission consideration, was apparently following the past practice of the last several years in making no specific provision for refund in interim orders in major rate cases. This practice was based upon the strong presumption that under current economic circumstances of the companies involved, there is virtually no likelihood that the interim increases would have to be refunded.

"In response to your second question, I am authorized to state that the Commission would be agreeable to the insertion of a refund provision in the interim order. We maintain our position that the Commission has the legal authority to require a refund as a condition of a final order entered in this case, regardless of whether a refund provision was included in the interim order. Nonetheless, the Commission has no objection to the modification of the interim order to expressly provide that a refund must be made if the rates established in the final order are lower than those approved for interim relief purposes, and to require the necessary accounting procedures."

On December 3, 1975, the circuit court issued its memorandum decision and order on the motions to dismiss. The court analogized an interim rate order to a temporary injunction in a judicial proceeding, and applied the rule that such an order, like a temporary injunction, should "go no further than necessary to preserve and protect existing rights pending the litigation." The court was of the view that the limitation of the PSC's power to the establishment of prospective rates meant that absent an express refund provision, "an excessive interim rate cannot be corrected by retrospective application of new rates established by the final Order of the PSC . . . ." The court stated that the order of June 16th was "more final than necessary to protect MG&E" and concluded:

"The failure of the Interim Rate Order to provide for escrowing in whole or in part the income from the surcharges or in the alternative provision for proper accounting records from which possible rebates could be made . . . and the failure of the PSC to retain jurisdiction for the purpose of determining whether or not such interim rates were excessive, was a fatal defect in the Interim Order.

"The Interim Order is reversed because of that fatal defect, and the case is remanded to the Public Service Commission for further proceedings in accordance with this Decision."

Although the circuit court required of the PSC only that which it had been willing to do voluntarily, the PSC immediately appealed from the December 3d order to this court.

The issues which will be considered on this appeal are these:

1. The power of the PSC to enact interim orders;

2. The availability of judicial review of interim and final orders;

3. The power of the PSC to order refunds; and

4. The propriety of the circuit court's reversing the interim rate order and remanding the matter to the PSC.

## INTERIM RATE ORDERS

The Public Service Commission may exercise only such power "as is expressly or by inference conferred upon it" by statute. *Eau Claire v. Wisconsin-Minnesota Light & Power Co.,* 178 Wis. 207, 215, 189 N.W. 476 (1922).

"The commission does not exercise the entire regulatory power of the state. It may exercise only such powers as the legislature has seen fit to confer upon it and those powers must be exercised in the manner prescribed." *Wisconsin Telephone Co. v. PSC,* 232 Wis. 274, 326, 287 N.W. 122 (1939).

The power of the PSC, as a general matter, to issue temporary or "interim" orders, to amend existing rate orders, and to issue conditional orders appears clearly from secs. 196.39, 196.395 and 196.70, Stats.:

"196.39 Change, amendment and rescission of orders; reopening cases. The commission may at any time, on its own motion or upon motion of an interested party, and upon notice to the public utility and after opportunity to be heard, rescind, alter or amend any order fixing rates, tolls, charges or schedules, or any other order made by the commission, and may reopen any case following the issuance of an order therein, for the taking of further evidence or for any other reason. Any order rescinding, altering, amending or reopening a prior order shall have the same effect as an original order."

"196.395 Test, conditional, emergency and supplemental orders; waiver of conditions in orders. The commission may issue orders calling for a test of actual results

under the requirements prescribed by such order, during which test period the commission may retain jurisdiction of the subject matter. The commission is empowered to issue conditional, temporary, emergency and supplemental orders. Where an order is issued upon certain stated conditions any party acting upon any part of such order shall be deemed to have accepted and waived all objections to the condition contained in such order."

"196.70 Temporary alteration or suspension of rates (1) The commission may be order when deemed by it necessary to prevent injury to the business or interests of the people or any public utility in case of any emergency to be judged of by the commission, temporarily alter, amend, or with the consent of the public utility concerned, suspend any existing rates, schedules and order relating to or affecting any public utility or part of any public utility.

"(2) Such order shall apply to one or more of the public utilities in this state or to any portion thereof as may be directed by the commission, and shall take effect at such time and remain in force for such length of time as may be prescribed by the commission."

These powers are limited by provisions elsewhere in ch. 196 requiring a hearing before the PSC may order changes in rates to consumers. *Wisconsin Tel. Co. v. P.S.C.*, 232 Wis. 274, 293, 303, 287 N.W. 122, 287 N.W. 593 (1939); secs. 196.20, 196.26, Stats. This court has recognized that temporary and emergency rates may be "appropriately and widely used" where they are justified by the circumstances. *Wisconsin Tel. Co. v. P.S.C.*, *supra*, 232 Wis. at 306. *Cf. La Crosse v. Railroad Comm.*, 172 Wis. 233, 178 N.W. 867 (1920); *Smith v. Railroad Comm.*, 169 Wis. 547, 173 N.W. 312 (1919).

There is a difference, however, between an order under sec. 196.395 and one under sec. 197.70. The latter section requires the commission to find that an emergency exists before acting under that section. No such finding was made in the case at bar, so we do not deal here with an

emergency order. *Cf. Re Mich. Consol. Gas Co.*, 88 P.U.R.3d 168, 170 (Mich. PSC 1971) ; *Re Public Service Electric & Gas Co.*, 6 P.U.R.4th 302, 306 (N.J. PUC 1974).

The problem of the lag in time between a utility's application for a rate change and final action thereon by the regulatory agency—known as "regulatory lag"—can be a severe one. *Re Detroit Edison Co.*, 7 P.U.R.4th 113, 116–118 (Mich. PSC 1974) ; *State v. N.J. Bell Tel. Co.*, 30 N.J. 16, 152 A.2d 35, 42 (1959). In recent years inflationary trends have prevailed as to many operating costs utilities must bear. At the same time, the difficulties facing the PSC in discharging its regulatory functions are considerable. Inflation has resulted in more frequent rate increase applications by utilities and hence a larger case load for the PSC. Moreover, factors relating to preservation of the environment and conservation of natural resources are demanding increasing attention in the regulatory process and increasing the responsibilities of both the PSC and the regulated utilities; departures from historic trends in demand for electricity have occurred. *See, e.g., Falkner v. Northern States Power Co.*, 75 Wis.2d 116, 118, 247 N.W.2d 885 (1977). For these and other reasons, a given rate case may call for re-evaluation not only of previously established rates but also of underlying concepts and practices used in the rate-making process. The result is that a utility may have a demonstrably serious inadequacy of revenues, but the time needed for proper resolution of all issues pertaining to its application for increased rates may unreasonably delay the needed relief.

We think it clear that the PSC's statutory authority to issue temporary orders is adequate to permit the granting of interim rate relief pending determination of final rates and that the PSC may issue such orders upon

finding that the requisite need for interim relief exists. For the guidance of the utilities and other interested parties it may be desirable for the PSC to set forth the conditions which it believes should exist before the PSC would grant the interim relief.

To the extent that an interim order is required to afford relief to a utility during the pendency of a rate proceeding, the hearings required prior to the interim order may be less extensive than would be required for the final order. An interim order must be accompanied by notice and hearing, although the exigencies of the situation may justify a more limited presentation by the utility and opposing parties. *Re Florida Power Corp.*, 8 P.U.R.4th 95, 97 (Fla. PSC 1975); *Re Detroit Edison Co.*, 7 P.U.R.4th 113, 116–118 (Mich. PSC 1974). In no event, however, is due process to be sacrificed. *American Smelting & Refining Co. v. Federal Power Comm.*, 494 F2d 925, 933 (D.C. Cir. 1974); *Wisconsin Tel. Co. v. P.S.C., supra*, 232 Wis. at 293, 294, 303.

JUDICIAL REVIEW OF INTERIM RATE ORDERS

Sec. 196.41, Stats., provides:

"Any order or determination of the commission may be reviewed in the manner provided in chapter 227."

Sec. 227.15, Stats.,[2] further provides:

"227.15 Judicial review; orders reviewable. Administrative decisions, which directly affect the legal rights, duties or privileges of any person, whether affirmative or negative in form, except the decisions of the depart-

[2] Ch. 227, Stats., was extensively modified by ch. 414, Laws of 1975. All proceedings in this case occurred before the effective date of this statute, however, and all references in this opinion to ch. 227 will be to the 1973 Statutes.

ment of revenue, the commissioner of banking and the commissioner of savings and loan, shall be subject to judicial review as provided in this chapter; but if specific statutory provisions require a petition for rehearing as a condition precedent, review shall be afforded only after such petition is filed and determined."

Although neither of the cited statutes expressly restricts its operation to administrative orders which are final, it is settled that not all decisions, orders or determinations which might fit within a literal reading of the statutes are subject to judicial review. This court set out the fundamental principles in *Pasch v. Dept. of Revenue,* 58 Wis.2d 346, 352–356, 206 N.W.2d 157 (1973), the court stating in part:

"The right to appeal from an administrative agency's determination is statutory and does not exist except where expressly given and cannot be extended to cases not within the statute. This court in *Universal Organization of Municipal Foremen, Supervisors & Administrative Personnel v. WERC* (1969), 42 Wis.2d 315, 322, 166 N.W.2d 239, citing *Wisconsin Telephone Co. v. Wisconsin Employment Relations Board* (1948), 253 Wis. 584, 589, 34 N.W.2d 844, stated:

" ' ". . . 'the right of review is entirely statutory, and . . . orders of the board are not reviewable unless made so by the statutes.' When an attempt is made to appeal from a nonappealable order, the . . . court does not have jurisdiction for any purpose, except to dismiss the appeal." '

"Although sec. 227.15, Stats., employs the broad term 'decision' in conferring the power of judicial review, such a term is to be read in accord with the legislative intent and not in its literal sense. The Supreme Court of the United States in *Chicago & Southern Air Lines v. Waterman Corp.* (1948), 333 U.S. 103, 106, 68 Sup. Ct. 431, 92 L. Ed. 568, stated:

" 'This Court long has held that statutes which employ broad terms to confer power of judicial review are not always to be read literally. Where Congress has au-

thorized review of "any order" or used other equally inclusive terms, courts have declined the opportunity to magnify their jurisdiction, by self-denying constructions which do not subject to judicial control orders which, from their nature, from the context of the Act, or from the relation of judicial power to the subject-matter, are inappropriate for review. . . .'

"This court has held that it was the legislative intent in sec. 227.15, Stats., to limit judicial review of administrative agency 'decisions' to final orders of the agency.

"' . . .'

"However, neither the form of the order nor the label of 'final' or 'interlocutory' necessarily determines its character as to reviewability. *In Columbia System v. United States* (1942), 316 U.S. 407, 425, 62 Sup. Ct. 1194, 86 L.Ed. 1563, the court held:

"' . . . The ultimate test of reviewability is not to be found in an overrefined technique, but in the need of the review to protect from the irreparable injury threatened in the exceptional case by administrative rulings which attach legal consequences to action taken in advance of other hearings and adjudications that may follow . . . .'

"An order that directly affects the legal rights, duties or privileges of a person is appealable pursuant to secs. 227.15 and 227.16, Stats., whether such order is denominated 'final' or 'interlocutory.' "

In the instant case it is not seriously disputed by the PSC that an order which fixes unconditionally the rates a utility must charge for its services is final and reviewable, notwithstanding that the order is only to be temporarily in force. Where the order fixes with finality the obligation of the utility to charge and the consumer to pay the established rates for however long the order is in force, the administrative process has run its course, and legal rights as to that period have been established and have an immediate impact upon the parties concerned. This conclusion is no less true because some future action by an administrative body may again

change prospectively the applicable rates; this possibility exists whether the order in question is permanent or temporary. Orders which finally establish rates on a temporary or interim basis, as well as on a "permanent" basis, are reviewable. *Application of St. Paul City Ry. Co.*, 235 Minn. 226, 50 N.W.2d 483 (1951); *State v. St. Paul City Ry. Co.*, 196 Minn. 456, 265 N.W. 434 (1936); *American Vitrified Products Co. v. P. S. C.*, 176 N.E.2d 145, 150, 151 (Ind. App. 1961); *New England Telephone & Telegraph Co. v. P.U.C.*, 354 A.2d 753, 765 (Me. 1976). *Cf. Wisconsin Telephone Co. v. P.S.C.*, 232 Wis. 274, 300, 301, 287 N. W. 122 (1939), *cert. denied* 309 U.S. 657; *ECEE, Inc. v. F.P.C.*, 526 F.2d 1270, 1273 (5th Cir. 1976).

The interim rate order in the case at bar authorized immediate collection of increased gas and electric rates and contained no provision contemplating a later reevaluation of whether the authorized rate increases were just and reasonable or whether a refund should be made. However, the PSC argues that notwithstanding the absence of a refund condition it has the power to require a refund of excesses collected under the temporary order as a condition upon the final order fixing permanent rates, and that the existence of this power renders the instant order non-final and non-reviewable. FOE, the City and MG&E concede that a refund condition might properly have been inserted in the temporary order and that if this is done a refund might be ordered as part of an order subsequently issued, but they dispute the broader authority claimed by the PSC; and FOE and the City contend that even if a refund could be ordered by the PSC the interim order is still final for purposes of review.

Accepting for the moment that the PSC had the refund power it claims—and which it would have had if the

interim order had so provided—it does not necessarily follow that the June 16th order is not reviewable. If the order finally disposes of matters having an immediate impact upon the rights of a party, the order may well be reviewable as to such matters despite the fact that further action by the agency is expected on other aspects of the case.

The PSC's interim order determined MG&E's additional revenue needs based on a 1975 test year, provided that the additional charges authorized should remain in effect only until the effective date of the order establishing permanent rates, and also provided:

"5. That the motion requesting an environmental impact statement is hereby denied.

"6. That the motion requesting opportunity for intervenors to comment in writing on any draft order submitted to the Commission or any Examiner's report submitted to the Commission is hereby denied.

"7. That any and all other motions made during the hearing and not previously ruled upon are hereby denied. All evidentiary rulings made by the examiner to which exceptions were taken and perfected are hereby sustained."

Other than the three quoted paragraphs, no mention was made of the various contentions advanced by FOE, the Environmental Decade and the City.

On November 6, 1976, the PSC issued its final order in these proceedings.[3] In this order the PSC redetermined the utility's revenue requirements, but on the basis of a 1976 test year, and authorized additional increases in rates charged to customers. In this respect the deter-

---

[3] Though the November 6, 1976, order had not been rendered at the time of the trial court's decision, this court may properly take judicial notice of the order, sec. 902.03(1)(b), Rules of Evidence, and under the circumstances we deem it advisable to do so for the limited purpose of comparing it to the order of June 16, 1975.

minations embodied in the final order are similar to those in the interim order. However, the final order differs from the June 16, 1975 order in the following regards, among others:

(1) The final order increased to 13 percent the authorized return on common stock equity, while the interim order used the 12 percent figure established in a previous permanent rate order.

(2) An "attrition allowance" was granted in the final order to compensate in part for the fact that the new rates would not become effective until near the end of the test year.

(3) The PSC precluded MG&E from participating in ownership of the proposed Koshkonong plant in the final order.

(4) Various modifications in specific rate design were discussed, and either rejected or implemented, in the final order, rather than applying across-the-board increases as had been done in the interim order.

(5) The PSC stated in the final order that it had prepared an environmental impact screening worksheet and had concluded that granting the increase to MG&E would not have a significant effect on the quality of the human environment.

(6) The fuel adjustment clause was discussed, modified, and as modified, continued.

It is apparent that a substantial number of the matters asserted by FOE and City in the circuit court were in fact considered by the PSC (the Koshkonong issues, for example) in its final order even though not considered in the interim order.

Thus the PSC's practice with respect to the interim rate proceeding here appears to have been to limit the inquiry in that proceeding primarily to ascertaining the existence and amount of the utility's immediate revenue needs and to defer most other matters for resolution in

the final order. Unquestionably, the PSC possesses broad discretion in managing the progress of cases on its docket provided it does so in good faith. We do not find the practice followed here to have been unreasonable as a means of reducing delays in some critical aspects of the regulatory process while deferring questions requiring lengthier consideration for disposition in connection with the final order in the case.

While we approve the basic practice followed by the PSC here, as we understand it from the record before us, we cannot endorse completely the manner of its execution. Neither a reviewing court nor parties to proceedings of the PSC should be required to determine by inference what issues have been settled and what issues have been deferred by an interim order. In such a state of un-certainty, parties may believe that their contentions have been summarily disposed of in the interim order and may therefore unnecessarily initiate proceedings for review. The reviewing court may be similarily in the dark as to whether review is proper at that stage. Much frustra-tion and confusion could be spared if the PSC would, to the extent it reasonably can, set forth in its interim orders what contentions or issues are before it, which are decided finally, which are decided only tentatively, and which are deferred altogether. Where relatively formalized proceedings such as those involved here are concerned, we think it reasonable to require that the ad-ministrative body thus demonstrate on the record the exercise of its discretion.

FOE contends that the PSC's June 16th order is final and reviewable even if the power to order a refund here existed. FOE relies on *Pasch, supra,* for the proposition that immediate judicial review is available where it is shown that irreparable harm will result unless judicial relief is granted. However, we are not satisfied that

irreparable harm has been shown. It is claimed that the absence of any accounting requirements in the June 16th order to enable refund to be made creates irreparable harm. However, there is no indication or claim that the normal accounting practices of MG&E would not yield adequate data for refund purposes, and in any event our conclusion as to the manner in which the circuit court should have disposed of the case renders consideration of this claim unnecessary. FOE also asserts that the PSC apparently does not grant interest when refunds are ordered, but again it is unclear whether this is in fact the case.[4] It is claimed that some low income customers may be unable to pay the increased rates and will be forced to discontinue service, but in view of the relatively small absolute impact these rate increases would have upon such rate payers we think this possibility too remote. Nor do we believe FOE's assertion that some small number of ratepayers may move away and not be found for refund purposes to be sufficient to require immediate judicial review. The claimed harm to the environment appears too remote to constitute irreparable injury within the time frame here involved. Moreover, many of the claimed harms relate to issues which were not among those addressed in the interim proceedings but were deferred for consideration in the final order.

We are of the opinion that where refund of excess rates is available, an interim rate order of the character involved here is not immediately subject to judicial review, but may be reviewed in connection with review of the final order in the case. The PSC should reevaluate its interim order as part of subsequent proceedings and

---

[4] In *United Gas Improvement Co. v. Callery Properties*, 382 U.S. 223, 230, 86 S. Ct. 360, 15 L. Ed2d 284 (1965), the Supreme Court held, apparently on general equitable grounds, that the FPC could require interest when a refund was ordered as a device to prevent unjust enrichment.

may order a refund if justified. Judicial review of the interim order may be had on review of the order establishing permanent rates; this review, together with the availability of refunds where required, adequately protects the interest of the ratepayer under circumstances such as these.

We do, however, again caution that the PSC's mere labeling of an order as interim is not conclusive on the question of review. Review is determined by looking at the substance of the order, and the PSC must make clear in its order what issues it is deciding and which it is deferring.

The next question is whether, as has been assumed, the PSC does in fact have the power to provide in a permanent rate order for the refund of sums collected under an unconditional interim rate order fixing rates subsequently found to be excessive. Although the PSC has already issued the final order in this case, and no refund condition was imposed, the question is one of continuing public importance so we will address it here.

## POWER TO ORDER REFUNDS

In fixing the rates to be charged by public utilities the PSC exercises an essentially legislative power, *Waukesha Gas & Electric Co. v. Railroad Comm.,* 181 Wis. 281, 287, 194 N.W. 846 (1923), and without statutory authority, it is limited to fixing rates to be applied prospectively. The PSC is empowered to grant refunds with respect to rates charged for transportation, sec. 195.37 (1), Stats.,[5] but no comparable authority exists in ch.

[5] "195.37 Freight charges; collection, refund. (1) COMPLAINTS, INVESTIGATIONS, HEARINGS, FINDINGS, REFUND. The commission may investigate and hear the complaint of

196. In *Wisconsin Telephone Co. v. P. S. C.*, this court stated:

"... in establishing a rate for the future, and in the absence of statutory authority therefor, the commission may not amortize a loss or make a rate sufficiently low to recapture the excesses."   232 Wis. at 303.

In *Milwaukee v. West Allis*, 217 Wis. 614, 620, 258 N.W. 851, 259 N.W. 724 (1935), the court observed that in public utility cases the commission had no power "to find reasonable value for services already rendered. Its jurisdiction is to fix rates, service, etc., to be followed in the future."

To permit the PSC to condition a rate order on refund of sums collected under previously established permanent rates would directly violate the rule against retroactive rate making. The PSC claims power to impose a refund condition only as to sums collected under unconditional temporary orders, but we think this distinction between permanent and temporary orders will not hold.

Where a conditional interim rate order is issued the PSC has not fully exercised its rate making power until such interim rates are re-evaluated in the final order. By conditioning the interim order on the possibility that a refund may be required, the PSC may be deemed to

any person aggrieved that the charge exacted for the transportation of property between points in Wisconsin, or for any service in connection therewith, or that the charge exacted for the storage of such property, or that any car service or demurrage charge exacted is erroneous, illegal, unusual or exorbitant. If the Commission shall find that the rate or charge exacted is erroneous, illegal, unusual or exorbitant, it shall find what would have been a reasonable rate or charge for such service. If the rate or charge so found shall be less than the charge exacted, the carrier shall refund the excess."

have retained with the consent of the utility[6] the power to issue an order relating back to the interim order for purposes of such re-evaluation. However, where the interim order is unconditional, we think the attempt to require refunds in the final order is indistinguishable from an attempt to require refund of rates collected under a previous order setting permanent rates.

The PSC has cited no direct authority which supports its position,[7] and in view of the proscription of retroactive rate-making established in the decisions of this court, we conclude that the PSC does not have the power to condition a final order in a rate proceeding upon refund of any excesses in rates collected under an unconditional temporary order of the sort involved here. *See City of Los Angeles v. P. U. C.,* 7 Cal.3d 331, 102 Cal. Rptr. 313, 497 P.2d 785 (1972).

CIRCUIT COURT ORDER OF REVERSAL

We have so far established that (1) the PSC could not have required refund without having placed a condi-

[6] Sec. 196.395 provides in part:

"Where an order is issued upon certain stated conditions any party acting upon any part of such order shall be deemed to have accepted and waived all objections to the condition contained in such order."

[7] PSC relies heavily on two decisions of the United States Supreme Court dealing with the authority of the Federal Power Commission in the setting of rates under the Natural Gas Act, *United Gas Improvement Co. v. Callery Properties,* 382 U.S. 223, 86 S. Ct. 360, 15 L. Ed2d 284 (1965), and *FPC v. Sunray DX Oil Co.,* 391 U.S. 9, 88 S. Ct. 1526, 20 L. Ed.2d 388 (1968). However, an examination of these cases indicates that they do not support the PCS's claim of authority here, but rather tend to refute it. These cases arose in the unique context of federal natural gas producer rate regulations. There is a different factual back-

tion in the June 16th order; (2) the PSC could have inserted a refund provision in the June 16th order had it so chosen, and the PSC believed that it had the power to order a refund even if the provision was not included; and (3) if refunding had been available no irreparable injury existed under the circumstances of this case from denial of review at the interim stage. Neither MG&E nor the PSC objects to the June 16th order being amended to include a refund provision. The circuit court's disposition of the case appears to have been eminently reasonable as a means of protecting the interests of the public with a minimum of disturbance of the administrative process, especially in view of the PSC's past practice of inserting refund provisions in temporary orders and its stated willingness to do so here. However, sec. 196.395, Stats., provides that the PSC "is empowered to issue conditional . . . orders," not that it must do so in any particular case. Nothing in the statutes renders it unlawful to issue an unconditional order. The consequence of failure to condition an order in a given case may be that an "interim" order not otherwise immediately reviewable will become so, but this result does not of itself infringe upon the rights of any person, however inadvisable it may seem. Determination of the form of its orders is clearly a matter committed to the PSC's, not the court's, discretion. Especially in view of the prevailing economic trends which, as the PSC observed, make the possibility that refunds will be required extremely low, it cannot be said that the PSC's action here was arbitrary or capricious. The trial court could not order the PSC to do that which the statute clearly makes optional. *Transamerican Finan. Corp. v. Dept. of Rev-*

ground involved between these natural gas cases and the case at bar, and significant differences between rate making by the Federal Power Commission and the Public Service Commission in this area.

*enue,* 56 Wis.2d 57, 69, 201 N.W.2d 552 (1972). The trial court should have treated the PSC's written expression of willingness to modify the order as a modification thereof and dismissed the petitions for review.

In view of the record and oral argument before this court, we must reverse the circuit court's order and remand the matter to the circuit court for entry of an order recognizing that the PSC reserved the power to require a refund if the interim rates were found excessive, and on this basis dismissing the petitions for review.

The circuit court never considered the validity of the interim rates on the merits. Nor do we. The only issue before the trial court on a motion to dismiss was the reviewability of the interim order. The trial court's decision—although using the language of reversal—should not under these circumstances be interpreted as affecting the validity of the rates established in the interim order.

*By the Court.*—Orders reversed and cause remanded with directions.