SIERRA CLUB, Petitioner-Appellant,

v.

WISCONSIN DEPARTMENT OF NATURAL RESOURCES,
Wisconsin Department of Administration and
Wisconsin Department of Administration
Division of Hearings and Appeals,
Respondents-Respondents,

DAIRYLAND POWER COOPERATIVE and Wisconsin
Public Service Corporation,
Interested Parties-Respondents.

Court of Appeals

*No. 2006AP2653. Oral argument May 16, 2007.
—Decided June 28, 2007.*

2007 WI App 181

(Also reported in 736 N.W.2d 918.)

616

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *David C. Bender* of *Garvey McNeal & McGillivray, S.C.*, Madison. There was oral argument by *David C. Bender*.

On behalf of the respondents-respondents Wisconsin Department of Natural Resources, the cause was orally argued by *P. Phillip Peterson*, asst. attorney general.

On behalf of the interested parties-respondents, the cause was submitted on the joint brief of Wisconsin Public Service Corporation and Dairyland Power Cooperative of *Mark A. Thimke, Linda E. Benefield, G.*

*Michael Halfenger* and *Leah M. Krider* of *Foley & Lardner LLP*, Milwaukee; *Jeffrey L. Landsman* and *Thomas J. Zaremba* of *Wheeler, Van Sickle & Anderson, S.C.*, Madison. There was oral argument by *Thomas L. Shriner, Jr.*

Before Dykman, Vergeront and Higginbotham, JJ.

¶ 1. VERGERONT, J. This case concerns an air emission permit issued by the Department of Natural Resources (DNR) for the construction of a new electric-generating facility. Sierra Club appeals the circuit court's dismissal of its petition for judicial review of the administrative law judge's order. The circuit court concluded the administrative order was not final because it directed DNR to make certain modifications to the permit that involved the exercise of DNR's discretion. We agree with the circuit court that the administrative order is not final and we therefore affirm. For the reasons we explain in the opinion, we deny the motion to dismiss the appeal on the ground of mootness.

## BACKGROUND

¶ 2. Under the federal Clean Air Act, no facility that is a major source of air pollutants may be constructed until the owner or operator of the facility has obtained a permit establishing that the facility complies with emission limits specifically established for that plant. *See* 42 U.S.C. § 7475(a) (2000).[1] Among other requirements, the specifications in the permits must be based on the maximum pollution control achievable with the best available pollution control techniques

---

[1] All references to the United States Code are to the 2000 version unless otherwise noted.

(BACT). *See* Wis. Stat. § 285.63(3)(a) (2005–06);[2] 42 U.S.C. § 7475(a)(4); 42 U.S.C. § 7479(3). In Wisconsin, DNR is the agency that issues the construction permits required by the Clean Air Act. *See* 42 U.S.C. §§ 7470–7479; Wis. Stat. § 285.60; Wis. Stat. § 285.01(13).

¶ 3. The Wisconsin Public Service Corporation (WPSC)[3] applied for and obtained a construction permit from DNR for a new electric-generating facility. Sierra Club disputed the adequacy of the emission limits in the permit and sought a hearing under Wis. Stat. § 227.42(1) and Wis. Stat. § 285.81(2) in order to challenge them.[4]

¶ 4. Both Sierra Club and WPSC moved for summary judgment. The administrative law judge (ALJ) denied Sierra Club's motion because there were factual disputes. The ALJ partially granted WPSC's motion, and, in doing so, ruled against Sierra Club on its contention that DNR was required to consider alternative production processes that were less polluting in its BACT analysis.

¶ 5. After a hearing on the remaining disputed issues, the ALJ issued a "Findings of Fact, Conclusions of Law and Order" (ALJ order) that rejected several contentions advanced by Sierra Club for lower emission

---

[2] All references to the Wisconsin Statutes are to the 2005–06 version unless otherwise noted.

[3] The new facility is jointly owned by WPSC and Dairyland Power Cooperative, which is also a party to this appeal. However, it is unnecessary to distinguish between the two and we therefore refer only to WPSC.

[4] Pursuant to Wis. Stat. § 227.43(1)(b), the Division of Hearings and Appeals assigns a hearing officer, or ALJ, to preside over hearings that DNR is required to conduct and that are not conducted by the DNR secretary.

limits, but found that certain emission limits in the permit did not satisfy the BACT requirements. The ALJ affirmed DNR's decision to issue the permit but ordered these modifications:

> (a) Based on the agreement of the Sierra Club and WPSC that the drift efficiency for the cooling tower should be established at 0.0005%, the Division directs WPSC to request a revision to the air construction permit to reflect this change, along with a corresponding adjustment to the particulate matter emission limits (lb./hr) for the cooling tower.

> (b) The permit shall be modified to include a control efficiency of 90 percent for $SO_2$ emissions as well as the existing mass emission limit. The control efficiency shall be based upon a rolling 30–day average or such other period as the [DNR] deems reasonable under the circumstances. Further, the permit shall include a rebuttable presumption that the permitholder continue to use low-sulfur PRB coal barring some unexpected change in the availability of such coal. The [DNR] shall make the final determination on whether any such change of circumstances has occurred, and such determination shall be subject to review by a contested case proceeding limited to that direct issue.

> (c) The permit shall be modified to make the 30–day average limit, not including start-up and shutdown, consistent with the 12 consecutive month limit (0.06 lbs./mmBtu) for $NO_x$ emissions.

With these modifications, the ALJ concluded, the permit "represents BACT for this facility." The ALJ ordered DNR to "draft the final permit language reflecting these modifications."

¶ 6. After the ALJ order was issued, Sierra Club requested clarification on certain of the modifications

that DNR was directed to make. In response, the ALJ stated that "under the express language of the [ALJ order], [DNR] is to interpret the Order and draft any modifications reflecting its intent. Unless [DNR] has similar concerns and believes it can not draft any such modifications, I am not inclined to clarify the Order further."[5]

¶ 7. Both Sierra Club and WPSC filed petitions for review of the ALJ order, which were consolidated in the Dane County Circuit Court. By stipulation of the parties, WPSC voluntarily withdrew its petition and filed a motion to dismiss Sierra Club's petition. In its motion WPSC asserted that the ALJ order was not final and therefore not subject to judicial review. The circuit court agreed with WPSC and dismissed Sierra Club's petition. The court reasoned that the ALJ order "vests substantial discretionary (and as yet unexercised) authority in the DNR" with regard to the modifications, those issues therefore were still to be resolved, and they affected the substantial interest of Sierra Club. The court viewed the "piecemeal (and potentially inconsistent)" proceedings that would result from judicial review while the administrative process is still continuing as inconsistent with the intent of WIS. STAT. ch. 227 and the case law.

¶ 8. After this appeal was filed, DNR issued the revised permit in response to the ALJ's order. Sierra Club petitioned for judicial review in the circuit court asking that the permit and revised permit be set aside, vacated, or remanded to DNR for further action (the

---

[5] WPSC also sought review by the DNR secretary of the ALJ order pursuant to WIS. ADMIN. CODE § NR 2.20 (Sept. 2004). The petition for review was denied.

April 2007 action).[6] That petition references this appeal and explains that a resolution of this appeal may affect the scope of the issues in that action.

## DISCUSSION

¶ 9. On appeal Sierra Club argues that the circuit court erred in concluding that the ALJ order was not a final order subject to review because, Sierra Club contends, the order definitively resolved a number of issues against it. Sierra Club acknowledges that the modifications ordered in paragraphs (a) and (b) permit DNR to exercise some discretion: the calculation of the adjustment to the particulate matter emissions limits for the cooling tower and the choice by DNR whether to use a rolling average based on a period other than thirty days in arriving at the 90% control efficiency for sulfur dioxide. However, Sierra Club contends that does not render nonfinal the issues which the ALJ *did* resolve.[7]

---

[6] In addition to petitioning for judicial review of the permit and revised permit, Sierra Club also requested administrative review pursuant to WIS. STAT. § 285.81(2). At oral argument, Sierra Club explained that it requested both administrative and judicial review at the same time because, given the short time limits for each, if it decides after more study that an administrative hearing is not necessary before judicial review, it will have lost the opportunity for judicial review.

[7] Sierra Club makes a separate argument that the ALJ was without authority to remand to DNR for additional action on the permit without first revoking the permit, and it presents this as its first argument. We do not understand why it is appropriate to address this argument before we decide on the finality of the ALJ order. If Sierra Club means that this asserted error by the ALJ affects the finality of the order, we do not agree: whether the ALJ employed the correct procedure for determining the precise terms of the modifications to the

DNR, who did not file an appeal but participated in oral argument at our invitation, agrees with Sierra Club.

¶ 10. WPSC responds that the circuit court was correct because the issue of the permit's emission limits was not resolved by the ALJ but required further determinations by DNR. In addition, WPSC has filed a motion to dismiss on the ground that this appeal is moot because of the April 2007 action. Consistent with its position that the ALJ order was not a final order, WPSC contends that Sierra Club may raise all objections to the ALJ order that it seeks to raise in this action in the April 2007 action.

¶ 11. Sierra Club replies that this action is not moot if the ALJ order is a final order because then it must raise its objections to that order in this action. DNR agrees with this position.

¶ 12. We address first the issue of the finality of the ALJ order and then WPSC's motion to dismiss.

I. Is the ALJ order final?

¶ 13. WISCONSIN STAT. § 227.52 provides that "[a]dministrative decisions which adversely affect the substantial interest of any person, whether by action or inaction, whether affirmative or negative in form, are subject to review as provided in this chapter . . . ." Although this statute does not require that an administrative decision be "final" in order to be subject to judicial review, case law has established that the legis-

---

permit does not alter the fact that the order does not determine those terms. Because we conclude the order is not final, we find it unnecessary to address this argument further. However, nothing in this opinion prevents Sierra Club from raising this issue in the April 2007 action.

lative intent was to limit judicial review to "final orders of the agency."[8] *Pasch v. DOR*, 58 Wis. 2d 346, 353, 206 N.W.2d 157 (1973); *see also Waste Mgmt. of Wis., Inc. v. DNR*, 128 Wis. 2d 59, 90, 381 N.W.2d 318 (1986) (section 227.52 (formerly Wɪs. Sᴛᴀᴛ. § 227.15) limits judicial review to "agency actions which are final"). The question whether an administrative order is final for purposes of judicial review is a question of law, which we review de novo. *Kimberly Area Sch. Dist. v. LIRC*, 2005 WI App 262, ¶ 9, 288 Wis. 2d 542, 707 N.W.2d 872.

█

¶ 14. In determining whether an agency order is final for purposes of judicial review, we focus on its substance and not its form or label. *Pasch*, 58 Wis. 2d at 356. Thus, the fact that the ALJ order in this case attached a notice of the manner and conditions for obtaining judicial review of the order under Wɪs. Sᴛᴀᴛ. § 227.52 and Wɪs. Sᴛᴀᴛ. § 227.53 does not mean that the order is final, although we understand that this notice may well have prompted Sierra Club to file a petition for judicial review lest it lose the right to do so.[9]

---

[8] Other sections of Wɪs. Sᴛᴀᴛ. ch. 227 refer to final decisions or orders without defining "final." *See, e.g.,* Wɪs. Sᴛᴀᴛ. §§ 227.46(2), (3)(a), (4), (6) and (8); Wɪs. Sᴛᴀᴛ. § 227.47; Wɪs. Sᴛᴀᴛ. § 227.485(5) and (6); and Wɪs. Sᴛᴀᴛ. § 227.49(1).

[9] The pertinent part of the notice stated:

> Any person aggrieved by the attached decision which adversely affects the substantial interests of such person by action or inaction, affirmative or negative in form is entitled to judicial review by filing a petition therefore in accordance with the provisions of Wis. Stat. §§ 227.52 and 227.53. Said petition must be filed within thirty (30) days after service of the agency decision sought to be reviewed.

Wɪsᴄᴏɴsɪɴ Sᴛᴀᴛ. § 227.53(1)(a)2 requires that a petition for review be served and filed within thirty days after service of the agency decision if no rehearing is requested.

¶ 15. A final administrative order for purposes of judicial review has been described as one that "directly affects the legal rights, duties, or privileges of a person"; one aspect of this standard is whether the person would have another opportunity for judicial review.[10] *Id.* at 356–57. In other words, a final order "determine[s] the further legal rights of the person seeking review." *Waste Mgmt.*, 128 Wis. 2d at 90 (summarizing *Pasch*). In contrast to a final order, an interlocutory order is one where "the substantial rights of the parties involved in the action remain undetermined and . . . the cause is retained for further action." *Pasch*, 58 Wis. 2d at 354.

¶ 16. The fact that an earlier judicial review might avoid the expense and inconvenience of further administrative proceedings is not a basis for concluding that an order is subject to judicial review. *Id.* at 357; *see also State v. WERC*, 65 Wis. 2d 624, 630–33, 223 N.W.2d 543 (1974). Such a consideration is "outweighed by the resultant delay that would accompany review of these agency determinations and the disruption of the agency's orderly process of adjudication in reaching its ultimate determination." *Pasch*, 58 Wis. 2d at 357. Rather than separate judicial reviews of a hearing officer's decisions, "the better practice" is to have the

---

[10] With respect to the opportunity for later judicial review, the *Pasch* court noted that in *Neu's Supply Line v. Department of Taxation*, 39 Wis. 2d 584, 159 N.W.2d 742 (1968), it had concluded that an agency order directing the issuance of a subpoena duces tecum during the investigatory stage was subject to judicial review in part because there was "no proceeding upon the merits . . . pending that could have produced an otherwise reviewable decision." *Pasch v. DOR*, 58 Wis. 2d 346, 356–57, 206 N.W.2d 157 (1973).

hearing examiner's determination "reviewed in its entirety if review is necessary." *WERC*, 65 Wis. 2d at 637.

¶ 17. Applying these definitions and considerations, courts have concluded the following administrative decisions are not final: denial of a taxpayer's motion to quash an assessment on the asserted ground that the agency had lost jurisdiction because of failure to comply with certain time limits, *Pasch* 58 Wis. 2d at 357–58; denial of a motion to dismiss that permitted a further hearing, *WERC*, 65 Wis. 2d at 630–33; and setting aside the ALJ's dismissal and remanding for a hearing on the merits, *Kimberly Area Sch.*, 288 Wis. 2d 542, ¶ 13.

¶ 18. In contrast, modifications to the applicant's plan of operation for a waste disposal site were held to be final decisions for purposes of judicial review because, unless the applicant complied with the modified requirements, it risked denial, suspension, or revocation of the license. *Waste Mgmt.*, 128 Wis. 2d at 90–91. Similarly, an interim utility rate order was held to be final for purposes of judicial review because

> the order fixe[d] with finality the obligation of the utility to charge and the consumer to pay the established rates for however long the order is in force, the administrative process has run its course, and legal rights as to that period have been established and have an immediate impact upon the parties concerned.

*Friends of Earth v. PSC*, 78 Wis. 2d 388, 405, 254 N.W.2d 299 (1977).

¶ 19. We agree with Sierra Club that the ALJ order in this case is unlike the orders in *Pasch*, *WERC*, and *Kimberly Area Sch.* because this order *does* determine on the merits after a hearing most of the challenges that Sierra Club made to the permit. How-

ever, the ALJ order does not fully resolve the modifications to be made regarding the cooling tower emissions and the sulfur dioxide emissions because those require further DNR action that is more than a ministerial implementation of the order. Sierra Club argues that in this respect the ALJ order is no different than the interim rate order in *Friends of Earth*, 78 Wis. 2d at 405–06, which the supreme court concluded was a final order for purposes of judicial review notwithstanding the fact that "some future action by an administrative body may again change prospectively the applicable rates; this possibility exists whether the order is permanent or temporary."

¶ 20. We do not agree with Sierra Club's analysis of *Friends of Earth*. The interim rate order in *Friends of Earth* was final because it determined the rates the utility could charge as long as the order was in effect, *id.*; the interim rate order did not contemplate further discretionary action by the Public Service Commission to determine the interim rate. In contrast, in this case the ALJ order itself contemplates further discretionary action by DNR in order to establish the terms of two of the modifications to the permit.

¶ 21. We also do not agree with Sierra Club and DNR that *Village of Thiensville v. DNR*, 130 Wis. 2d 276, 386 N.W.2d 519 (Ct. App. 1986), supports the position that the ALJ order is final. In *Village of Thiensville*, 130 Wis. 2d at 277–78, the issue was the scope of DNR review of modifications to a water pollutant discharge permit under Wis. Stat. § 147.20(1), now Wis. Stat. § 283.63. The modifications were made by DNR, after a hearing, four years after the original permit was issued and were based on events occurring after the original permit was issued. *Id.* at 278. We concluded the ALJ correctly limited his review to the

627

modified terms and correctly refused to hear a challenge to the original terms of the permit that were unaffected by the modifications. *Id.* at 278, 282. The modifications in *Village of Thiensville* were not made in response to an order issued by an ALJ, but were the result of an entirely separate proceeding initiated several years after the original permit issued. *Id.*

¶ 22. DNR appears to be of the view that, because WIS. STAT. § 285.81(1) and (2) provide for administrative hearings for "any permit, part of a permit, condition or requirement in a permit," the ALJ order is final even though it leaves certain "parts" of the permit still to be resolved. We do not agree. This statute permits the persons identified in subsections (1) and (2) to challenge only a "part" of a permit, or only certain "conditions or requirements." *Id.* It does not address when a decision issued by an ALJ after the administrative hearing is final. The same is true of the regulation that authorizes DNR to modify a permit based on its own determination or on the permit holder's request. WIS. ADMIN. CODE § NR 406.11(1)(c)-(d) (May 2007). It does not follow from the fact that DNR is authorized to modify permits that the ALJ order directing it to do so does not affect the finality of the order.

¶ 23. At bottom, the logic of the position of Sierra Club and DNR is that we should decide the question of finality by focusing on individual issues: if the ALJ has resolved a substantive issue on the merits in an order, the order is final as to that issue and subject to judicial review on that issue, regardless of whether further administrative action is required to resolve other substantive issues. Under this logic, for example, the ALJ order granting partial summary judgment to WPSC was final insofar as it ruled that DNR was not

required to consider alternative production processes that were less polluting in its BACT analysis.

¶ 24. We are convinced the legislature did not intend that the term "decision" in WIS. STAT. § 227.52 means a decision on each particular substantive issue. Such a construction would result in more than one appeal in many administrative proceedings concerning a challenge to a permit. This is inconsistent with the principle that judicial review should be of the agency action "in its entirety." *See WERC*, 65 Wis. 2d at 637; *Pasch*, 58 Wis. 2d at 357. Even if DNR does not consider separate appeals on discrete issues disruptive to the administrative process, separate appeals add to the burden on the reviewing courts. There is no doubt that it is more efficient for circuit courts and the court of appeals to address all the issues in one petition for judicial review. *Cf. State v. Rabe*, 96 Wis. 2d 48, 56–57, 291 N.W.2d 809 (1980) (one reason that WIS. STAT. § 808.03 defines final orders for purposes of appeal to the court of appeals as "dispos[ing] of the entire matter in litigation ..." is that this reduces the burden of unnecessary appeals on the court of appeals). In addition, separate appeals may be assigned to different circuit court judges, resulting in inconsistent opinions. Notwithstanding DNR's support of separate appeals, we think the potential for inconsistent judicial rulings and for separate remands at different times to the ALJ would likely make the administrative process more complicated and less efficient.

¶ 25. Both Sierra Club and DNR point out that there are frequently sequential modifications to construction permits and they argue that waiting until all modifications and revisions are completed will postpone indefinitely judicial review of the original permit. How-

ever, we are addressing on this appeal only the modifications ordered in the ALJ order. A conclusion that judicial review of the ALJ order must await DNR's action on those modifications does not in any way suggest that judicial review is dependent upon DNR action on other modifications.

¶ 26. We recognize that parties to an administrative proceeding would prefer to have judicial review of issues decided against them as promptly as possible: Sierra Club cites the delay involved with the remand as a factor favoring judicial review of the issues the ALJ did resolve in its order. However, this consideration does not outweigh the burdens that additional appeals place on the administrative and judicial process. *See Pasch*, 58 Wis. 2d at 357. We also observe that procedural mechanisms, such as time limits imposed by the ALJ or the retaining jurisdiction by the ALJ, may be available in the administrative process to minimize delay when further agency action is required.

¶ 27. An additional—and critical—consideration in deciding whether an order is final is whether the party objecting to it will have a later opportunity for review of the order. *Id.* WPSC concedes that, if the ALJ order is not final, then in the April 2007 action, Sierra Club may raise all the challenges it has to the ALJ order, the partial summary judgment order, and the modifications made pursuant to the ALJ order. We conclude this is a correct concession. In essence, similar to appeals from the circuit court to the appellate court, appeal of a final administrative order will bring before the reviewing tribunal all nonfinal orders. *See* Wis. Stat. § 809.10(4).

¶ 28. In summary, we conclude the ALJ order is not final. It does not fully resolve the modifications to be made regarding the cooling tower emissions and the sulfur dioxide emissions but instead requires further DNR action that is more than a ministerial implementation of the order. In addition, Sierra Club may raise all objections to this ALJ order in the April 2007 action.

¶ 29. We make a further comment on the finality issue. As the parties recognize, the difficulty in analyzing finality in this case arises because the ALJ did not retain jurisdiction of the matter until DNR modified the permit as ordered. In such an alternative scenario, the ALJ would then issue an order approving a modified permit after considering any objections the parties had to the modifications DNR made. The parties agree that, had the ALJ done this, there would be no question that the order to DNR to make the modifications would not be a final order and that the order approving the issuance of the permit with modifications would be. We do not resolve the issue of whether the ALJ had the authority to use the procedure it did, because a resolution of that issue is not necessary to decide if the order is final and because the arguments on this point are not fully developed. However, even if the ALJ could properly employ the procedure it did, it may be that, in future cases presenting a similar need for further DNR action, issuing an interim order and retaining jurisdiction will be a more efficient administrative procedure and better facilitate judicial review.

II. Is this appeal moot?

¶ 30. Although we agree with WPSC that the ALJ order is not final, we do not agree that this appeal is

moot. An appeal is moot only if the resolution of the issue on appeal will have no practical effect on the underlying controversy. *State ex rel. Olson v. Litscher*, 2000 WI App 61, ¶ 3, 233 Wis. 2d 685, 608 N.W.2d 425. A determination of the question whether the ALJ order is final has a very definite effect on the question of what issues Sierra Club may raise in the petition for judicial review now pending in circuit court.

## CONCLUSION

¶ 31. We conclude that the ALJ order is not final and we therefore affirm the circuit court's order dismissing the petition for review. Sierra Club may raise all objections to the ALJ order in the April 2007 action. We also deny WPSC's motion to dismiss the appeal on the ground of mootness.

*By the Court.*—Order affirmed.